Argued July 8, decided July 23, 1912.

## STATE ex rel. *v.* OLCOTT.

[125 Pac. 303.]

STATUTES — ENACTMENT — SUBMISSION TO POPULAR VOTE — PETITION — "LEGALLY SUFFICIENT."

1. Under Section 3474, L. O. L., providing that the court, on a showing that any petition for a referendum is not legally sufficient, may enjoin the Secretary of State and all other officers from certifying or printing the title and number of the measure on the official ballot, the petition, to be "legally sufficient," must be a valid petition, signed by legal voters, and complying substantially with the requirements of the law; and, although a petition appears regular on its face, the court may inquire into its legal sufficiency.

CONSTITUTIONAL LAW—DISTRIBUTION OF GOVERNMENTAL POWERS—JUDICIAL FUNCTIONS.

2. The filing of a petition for a referendum is not a legislative act, but merely a matter preliminary to the legislative act; and hence an investigation into its sufficiency is not beyond the jurisdiction of the courts.

STATUTES—ENACTMENT—SUBMISSION TO POPULAR VOTE—PETITION.

3. Section 3472, L. O. L., referring to initiative petitions, provides that every sheet for petitioners' signatures shall be attached to a full and correct copy of the title and text of the measure; that referendum petitions shall be attached to a full and correct copy of the measure; and that all petitions for the initiative or referendum "and sheets for signatures" shall be printed on pages of a specified size. *Held,* that it is not necessary that each referendum petition have printed thereon the form of petition provided by the act, and a full copy of the title and text of the measure proposed, but that several referendum petitions may be attached to one full and correct copy of the measure.

STATUTES—ENACTMENT—SUBMISSION TO POPULAR VOTE—PETITION.

4. Where referendum petitions contain evidence of forgeries, perpetrated either by the circulators, or with their connivance, the *prima facie* case in favor of the genuineness of the petitions is overcome; and the burden is on those upholding the validity of the petition to establish the genuineness of each signature.

STATUTES—ENACTMENT—SUBMISSION TO POPULAR VOTE—PETITION.

5. It is the duty of the circulator of a referendum petition to see that the proper address of the signers thereto is placed on the petition.

From Marion: WILLIAM GALLOWAY, Judge.

This is a suit brought by the State of Oregon, on the relation of John H. McNary, District Attorney, against Ben W. Olcott, Secretary of State, to enjoin the defend-

ant from placing upon the ballot a referendum upon an appropriation for the benefit of the State University.

REVERSED: SUIT DISMISSED.

For appellant there was a brief with oral arguments by *Mr. W. S. U'Ren, Mr. Charles E. S. Wood* and *Mr. Andrew M. Crawford,* Attorney General.

For respondent there was a brief with oral arguments by *Mr. Woodson T. Slater* and *Mr. Martin L. Pipes.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

The facts set forth in the complaint are substantially the same as alleged in *Friendly* v. *Olcott,* 61 Or. 580 (123 Pac. 53), and need not be restated here. In that case we held that a private citizen could not bring a suit of this character and dismissed the suit; and thereafter this suit was instituted upon the relation of the district attorney of the third judicial district, having for its object the same relief that was sought in the former proceeding. We regard it as settled by our former opinion that the right to bring a suit to enjoin the Secretary from certifying or printing upon the official ballot the title or number of any measure, when it is shown to be not legally sufficient, resides in the district attorney, and we will not further discuss that phase of the case.

1. Section 3474, L. O. L., provides that, "on a showing that any petition filed is not legally sufficient, the court may enjoin the Secretary of State and all other officers from certifying or printing on the official ballot for the ensuing election the ballot title and numbers of such measure." On behalf of defendant it is contended that, by the words "legally sufficient," as here used, it is meant that the petition shall be regular upon its face, and that, if a petition, regular upon its face, shall be presented, the court cannot go behind its apparent regularity to inquire into its genuineness. We cannot

assent to this view. It is conceded that there is no power granted to the Secretary of State to call witnesses and examine into the facts to determine the validity of any petition. His powers are not judicial, but ministerial; and if this power does not reside in the courts a petition, consisting wholly of forged names, can be presented, and the public put to the expense of printing the measure and submitting it to a vote. This would be giving a forced and unnatural construction of the law in favor of fraud. The legislature never contemplated such a vicious construction. We are of the opinion that by the term "legally sufficient" the legislature meant to describe a valid petition, signed by legal voters, and complying substantially, not necessarily technically, with the requirements of the law.

2. It is also contended that the filing of the petition is a legislative act, and consequently beyond the jurisdiction of the courts to investigate; but this contention is also unsound. The signing and filing of a petition is a matter preliminary to the legislative act. It is that which calls the legislative power into action. It is more a legislative act than the placing of a candidate's name for the State legislature upon the ballot is a legislative act. If the candidate for legislative honors presents a petition, signed by the required number of legal voters, and in other respects complying with the law, his name is entitled to go upon the ballot. If the partisan of a referendum measure presents a like petition, the measure is entitled to go upon the ballot. Any other construction would place it in the power of one dishonest person, or a number of such, to hold up and delay any measure, no matter how meritorious, by means of a fraudulent petition. By this means the whole machinery of the State government could be held up. The courts, the asylums, the penitentiaries, the various State institu-

tions, could be deprived of the means necessary to sustain their existence by the fraudulent act of one or a few persons. Such is not the law.

The question of jurisdiction being settled, we now come to the principal questions that constitute the gist of this controversy:

(1) Are the petitions in such form as to substantially comply with Sections 3471, 3472, and 3473, L. O. L.? Such sections, so far as they relate to the matter now under consideration, are as follows:

"Sec. 3471. *Form of Initiative Petition.*—The following shall be substantially the form of petition for any law, amendment to the Constitution of the State of Oregon, city ordinance or amendment to a city charter, proposed by the initiative:

"WARNING.

"It is a felony for any one to sign any initiative or referendum petition with any name other than his own, or to knowingly sign his name more than once for the measure, or to sign such petition when he is not a legal voter.

"INITIATIVE PETITION.

"To the honorable————, Secretary of State for the State of Oregon (or to the honorable————, clerk, auditor, or recorder, as the case may be, for the city of ————):

"We, the undersigned citizens and legal voters of the State of Oregon (and of the district of————, county of ————, or city of————, as the case may be), respectfully demand that the following proposed law (or amendment to the constitution, ordinance, or amendment to the city charter, as the case may be), shall be submitted to the legal voters of the State of Oregon (district of————, county of————, or city of————, as the case may be), for their approval or rejection at the regular, general election, or (regular or special city election), to be held on the———— day of————, A. D. 19—, and each for himself says: I have personally signed this petition; I am a legal voter of the State of Oregon (and

of the district of————, county of————, city of————,
as the case may be) ; my residence and post office are
correctly written after my name.

"Name—————, Residence—————, Post Office
—————.   (If in a city, street and number.)

"(Here follow twenty numbered lines for signatures.)

"Sec. 3472.   Every such sheet for petitioners' sig-
natures shall be attached to a full and correct copy of
the title and text of the measure so proposed by the
initiative petition; but such petition may be filed with
the Secretary of State in numbered sections for conveni-
ence in handling, and referendum petitions shall be
attached to a full and correct copy of the measure on
which the referendum is demanded and may be filed in
numbered sections in like manner.   Not more than twenty
signatures on one sheet shall be counted.   When any
such initiative or referendum petition shall be offered
for filing, the Secretary of State, in the presence of the
Governor and the person offering the same for filing,
shall detach the sheets containing the signatures and
affidavits and cause them all to be attached to one or
more printed copies of the measure so proposed by initi-
ative or referendum petitions; *provided,* all petitions for
the initiative and for the referendum and sheets for sig-
natures shall be printed on pages seven inches in width
by ten inches in length, with a margin of one and three-
fourths inches at the top for binding; if the aforesaid
sheets shall be too bulky for convenient binding in one
volume, they may be bound in two or more volumes, those
in each volume to be attached to a single printed copy
of such measure; the detached copies of such measure
shall be delivered to the person offering the same for
filing.   If any such measure shall, at the ensuing elec-
tion, be approved by the people, then the copies thereof
so preserved, with the sheets and signatures and affi-
davits, and a certified copy of the Governor's proclama-
tion declaring the same to have been approved by the
people, shall be bound together in such form that they
may be conveniently identified and preserved.

"Sec. 3473.   Each and every sheet of every such petition
containing signatures shall be verified on the back there-
of, in substantially the following form, by the person

who circulated said sheet of said petition, by his or her affidavit hereon and as a part thereof:

"State of Oregon, County————, ss.

"I, ————, being first duly sworn, say: (Here shall be legibly written or typewritten the names of the signers of the sheet), signed this sheet of the foregoing petition, and each of them signed his name thereto in my presence; I believe that each has stated his name, post office address and residence correctly, and that each signer is a legal voter of the State of Oregon and County of———— (or of the city of————, as the case may be).

"Signature and post office address of affiant.)

"Subscribed and sworn to before me this ————day of ————, A. D. 19—.

"(Signature and title of officer before whom oath is made, and his post office address.)

"The forms herein given are not mandatory and if substantially followed in any petition it shall be sufficient, disregarding clerical and merely technical errors."

(2) Does the petition contain a sufficient number of genuine signatures of legal voters to entitle the petitioners to have the measure placed upon the ballot?

The sections above cited prescribe the form of petition and the method by which a copy of the measure, with its title, shall be attached; but it is especially provided that such forms "are not mandatory and if substantially followed in any petition it shall be sufficient."

3. Section 3470, L. O. L., prescribes the form of a referendum petition. Section 3472 enacts as follows:

"Every such sheet for petitioners' signatures shall be attached to a full and correct copy of the title and text of the measure so proposed by the initiative petition."

It would thus appear that each sheet is to be regarded as a separate petition, and that several initiative petitions might be attached to only one full and correct copy of the title and text of the measure so proposed. By the means suggested, "every such sheet" would be fastened to each other, and also to a full and correct copy of the

title and text of the initiative bill. If, however, in initiative petitions we should adopt the strict and technical rule that "every such sheet" must have attached a separate copy of the title and text of the measure proposed, so that there must be as many copies thereof as there are of the petition, a ruling to that effect could have no application to a referendum petition.

Section 3472, L. O. L., contains a clause as follows: "Referendum petitions shall be attached to a full and correct copy of the measure on which the referendum is demanded and may be filed in numbered sections" (for convenience in handling). The use of the plural form "petitions" in the language last quoted, and the omission therefrom of the words "every such sheet," as employed in the excerpts first hereinbefore noted as applicable to initiative petitions, conclusively show that two or more referendum petitions may be attached to only one full and correct copy of the measure on which the referendum is demanded.

The law relating to direct legislation elections does not contemplate that each petition shall have printed thereon the language constituting the form recommended, the 20 numbered lines for signatures, and also a full copy of the title and text of the measure proposed. This conclusion results from an examination of the language of the following clause:

"All petitions for the initiative and for the referendum *and sheets for signatures* shall be printed on pages seven inches in width by ten inches in length."

The use of the phrase "and sheets for signatures" indisputably shows that such sheets, though duly attached, are only auxiliary to the petitions, from which language it is clearly to be implied that a full and correct copy of the proposed measure need not be printed on the petition.

An examination of the sections of the statute referred to induce the conclusion that subdivision 36 of numbered section 210 and subdivision 64 of the same numbered section of the referendum petitions comply with the requirements of the law applicable thereto; and hence they are valid, and the names of the petitioners thereon, and on other petitions of similar import, should be counted and considered in determining whether or not a sufficient number had subscribed their names to cause the measure to be referred to the people for their action at the coming election.

We come now to consider the question of the genuineness of the signatures to the petitions. The origin of the movement to refer the measure in question is not altogether creditable to its promoters. The State University is located at the City of Eugene, in Lane County. Certain citizens of the southern portion of the county, including the City of Cottage Grove, were desirous of being incorporated into a new county, with Cottage Grove as its county seat. This was strenuously opposed by the citizens of the northern part of the county, and particularly by those of Eugene, and the measure was defeated. As a matter of retaliation, or, perhaps, to convince the citizens of Eugene that their city and its institutions would be better off without Cottage Grove in the same county, this movement was inaugurated. That there was no general and spontaneous desire on the part of the general public to withhold the appropriation from the university soon became apparent, and the promoters were compelled to employ an attorney to secure the necessary signatures. This in itself was not an unusual course, as it is difficult to find citizen who are so devoted to their principles as to be willing to circulate such petitions without compensation. They employed Mr. Parkinson of Portland, who undertook to procure such signatures for 3½ cents a name. He employed a large number of cir-

culators, who went forth into the highways and byways to procure signatures. Seven of these, at least, devised an easy method of earning their money. They would get together and pass their petitions around, each signing a few names in a disguised hand, thus minimizing the chance of detection. These forgeries were clearly proved, mostly by the admission of the parties upon the trial of the case of *Friendly* v. *Olcott,* the testimony in which case was, by stipulation, used in the case at bar. In the present case these signatures are admitted by the pleadings to be forgeries, though they were filed in the Secretary's office as part of the original petition. Other signatures to the number of 800 were discovered by Mr. Parkinson to be forgeries, and were eliminated from the petitions before filing. The petition as filed contained 13,715 names. Of these, it is admitted that 3,778 are forgeries, perpetrated by dishonest circulators.

4. In addition to these, we find that the petitions circulated by Thurber, Mathews, Dirk, Wolwein, and Rahles, *alias* Wallace, contain such evidence of forgeries, perpetrated either by the circulators, or with their connivance, that the *prima facie* case made by the affidavits of these circulators in favor of the genuineness of these petitions is overcome, putting the burden of proof upon the defendant to establish the genuineness of each signature; and, as this has not been done, we reject all the signatures on these petitions, amounting in the aggregate to 1,183 names, although it is probable that many names on such petitions are genuine.

We have, with much labor, gone over all the other names on the petition as filed, viewing it in the light of the testimony of experts and detectives in regard to the genuineness of the signatures and the residence of the parties. In several instances the testimony of experts as to forged signatures is contradicted by the parties themselves, who appear in court and swear that the

alleged forgeries are their genuine signatures. While we do not question the motives of these experts, and believe that their intention was to state the exact truth, these mistakes, which have been proved, cause us to hesitate and be cautious in receiving their testimony. The testimony of the detectives as to the fact that certain persons signing petitions were not found, and were unknown at the place given by them as a residence, is largely hearsay, and for that reason was inadmissible, and in several instances it is shown to be inaccurate, though, no doubt, honestly given. We are convinced, however, that there are spurious and forged names on several of the petitions; but the evidence does not, in our opinion, establish the fact that such names were so placed by the circulators, or with their connivance. It would be almost impossible to circulate a petition containing so great a number of signatures in a city like Portland without some fictitious names being placed upon it. As the circulator of a petition is the agent of the signer, and his oath is the only evidence of the genuineness of the signature, it follows as a matter of course that, where he is shown to have acted fraudulently, the value of his verification is destroyed, and the petition must fall, unless the genuine signatures are affirmatively shown. But, in the absence of evidence of intentional fraud or guilty knowledge on the part of the circulator, it would be an unjust rule to deprive the honest signer of his right to have his signature counted, merely because some disqualified person signed, or because some person, without the knowledge of the circulator, affixed a fictitious name, or gave a fictitious address.

5. A careful scrutiny of all the testimony by the experts and detectives convinces us that there are, in addition to the signatures already held to be invalid, 936 names which are either fictitious or absolute forgeries, and should therefore be stricken from the

petitions, since it is the business of the circulator to see that the proper address is placed upon the petition. This includes those names where false or incorrect addresses have been given. In addition to this, there are 205 names appearing upon the petitions which are not included in the verifications, and for that reason will have to be eliminated. We believe this leaves 7,613 names upon the petitions which have not been successfully attacked.

It is claimed that there is evidence that Mr. Parkinson was aware of these forgeries; and that, as he acted as agent of the promoters of this referendum, and presented for filing a petition containing a large number of fraudulent names, the whole petition should be rejected as a forged document. We do not think the evidence shows that he was in any way cognizant of the fact that forged names were upon the petition when presented, but that, on the contrary, he supposed that all forged names had been eliminated. It probably would have been better if he had refused to become an assistant of people who were initiating a campaign of spite against a rival town, and it is evident that he was not careful in the selection of his circulators, and allowed some of them to impose upon his good nature and credulity, and for this he is censurable; but it appears fairly probable that when he presented the petition he believed that he was filing a paper from which fraudulent signatures had been eliminated.

It requires 6,135 signatures to place this measure upon the ballot, and we therefore hold that it is entitled to be so placed. Many details of the evidence are not discussed in this opinion, not because they have been overlooked, for they have been carefully weighed and examined, but because the time within which this measure must appear in the voters' pamphlet is now drawing near its close, and to consume it by the editorial work

of preparing a more extended opinion might prevent friends and opponents of the measure from discussing its merits in that document.

The decree of the circuit court will be reversed and the suit dismissed.

REVERSED: SUIT DISMISSED.

MR. JUSTICE BURNETT concurs only in the result of this opinion.

MR. CHIEF JUSTICE EAKIN delivers the following dissenting opinion:

I disagree with the opinion on but one question: As to the form of the petition in referendum cases. I am of the opinion that every sheet containing blank lines for signatures must contain the petition.

Section 3470, L. O. L., which gives the form for the petition for referendum, provides:

"WARNING.

"It is a felony for any one to sign any initiative or referendum petition with any name other than his own, or to knowingly sign his name more than once for the same measure, or to sign such petition when he is not a legal voter.

"PETITION FOR REFERENDUM.

"To the honorable————, Secretary of State for the State of Oregon (or to the honorable————clerk, auditor, or recorder, as the case may be, of the city of ————):

"We, the undersigned citizens and legal voters of the State of Oregon (and the district of————, county of ————, or city of————, as the case may be), respectfully order that the Senate (or House) Bill No.————, entitled (title of act, and if the petition is against less than the whole act, then set forth here the part or parts on which the referendum is sought), passed by the ————Legislative Assembly of the State of Oregon, at the regular (special) session of said Legislative Assem-

bly, shall be referred to the people of the State (district of———, county of———, or city of———, as the case may be), for their approval or rejection, at the regular (special) election to be held on the———day of———, A. D. 19—, and each for himself says: I have personally signed this petition; I am a legal voter of the State of Oregon, and (district of———, county of———, city of ———, as the case may be) ; my residence and post office are correctly written after my name.

"Name———, Residence———, Post office———.

"(Here follow twenty numbered lines for signatures.)"

Section 3471, providing for the form of the initiative petition, which is set out in the opinion, does not provide for the designation of the law submitted thereby, other than "the following proposed law." In the referendum form of petition, it contemplates that the number of the bill and its title shall be given; but by Section 3472 it is provided that every such sheet for petitioners' signatures shall be attached to a full and correct copy of the measure proposed by the initiative; and that referendum petitions shall be attached to a full and correct copy of the measure on which the referendum is demanded. The vital question is, Must the petition be printed on every sheet presented for petitioners' signatures? and not whether every sheet must have attached thereto a copy of the measure. The language and purpose of the two forms are identical in this regard, and cannot be distinguished, namely, the form of petition is given, and it is stated, "here follow twenty numbered lines for signatures," that is, form for 20 names on every sheet with the petition; and the evident purpose of this requirement in both cases is to prevent the possibility of securing signatures to blank sheets and afterwards attaching them to a petition. It is intended as an assurance that the registered voter will have under his eye, as a part of the sheet on which he places his name, the warning, as well as the measure to which he is subscribing. This

Sig. 10

whole act is bristling with precautions against fraud in its use, and this is the most important of them—the assurance that the man, who writes his name as one of twenty on the sheet, signs the petition.

These sheets came to the Secretary of State in sections of five or ten separate sheets, to each section of which is attached the petition; and it is not in the power of the Secretary to know whether they were in that form when signed. A large majority of these sections has the petition printed on every sheet; but there are 5,000 signatures presented on sheets that were otherwise blank, except the printed heading, "Name," "Residence, "Post office."

The main argument of defendant in favor of this form of petition is the impossibility, in many instances, of printing the title of the act, on account of its length, on a sheet 7x10 inches, leaving room for 20 signatures. But this objection is without merit, as it is stated in Section 3474 that these forms are not mandatory, and, if substantially followed, it shall be sufficient. Therefore a short synopsis of the title or the number of the bill alone would be a substantial compliance with the resolution, as the sheets must be attached to the copy of the meas- this objection is without merit, as it is stated in Section stantial compliance with the forms given to have the petition on one sheet and the signatures on a separate sheet; and the names on all such sheets should be stricken out.

It was conceded at the argument that if the names, contained on sheets not having the petition upon them, are discarded, the plaintiff must prevail; therefore the decree should be affirmed.