Argued September 29, affirmed October 27, 1922.

## STATE EX REL. CARSON *v.* KOZER.

(210 Pac. 179.)

**Constitutional Law—Court may Inquire Whether Initiative Petition for Amendment is in Proper Form and Signed by Enough Voters.**

1. In a proceeding under Section 4099, Or. L., to compel or restrain the placing of an initiative measure on the ballot, the court may inquire and ascertain not only whether the petition is presented in a form substantially like that prescribed by Section 4098, but also whether it is signed by a sufficient number of legal voters.

**Constitutional Law—Evidence may be Offered in Support or to Contradict Genuineness of Signatures on Initiative Petition.**

2. Under Section 4098, Or. L., relating to initiative petitions, a certificate of the clerk of the county in which the petition was circulated that the signatures on the petition were compared with the signatures on the registration-books and found to be genuine is *prima facie* evidence of the qualifications of the clerk as a witness and of the genuineness of the signatures attached, but in an action under Section 4099, to compel or restrain the placing of an initiative measure on the ballot, extraneous evidence may be offered in support or contradiction of the evidence in the certificates.

**Constitutional Law — Complaint Attacking Initiative Petition must Attack Signatures Attached Thereto.**

3. A complaint in an action under Section 4099, Or. L., to restrain the placing of an initiative measure on the ballot, which

---

1. Judicial review of initiative and referendum proceedings, see note in Ann. Cas. 1916B, 829.

merely alleges that the county clerk, who made the certificate, did not compare the signatures on the petition with the signatures on the registration books as prescribed by Section 4098, is only an attack upon the evidence, and not an attack upon the signatures, which is the substance of the petition, and does not state a cause of suit, but to be a good complaint it must contain an allegation attacking the signatures attached to the petition.

Constitutional Law—Upon Proof That County Clerk did not Compare Signatures on Initiative Petition Defendant must Prove Legality of Signatures.

4. In a suit under Section 4099, Or. L., to restrain the placing of an initiative petition on the ballot, upon proof that the county clerk did not compare the signatures in the mode required by Section 4098, his certificate lost its *prima facie* quality, and defendant was required to offer evidence tending to establish the legality of the disputed signatures.

From Marion: PERCY R. KELLY, Judge.

In Banc.

For appellant there was a brief and oral arguments by *Mr. Rogers MacVeagh* and *Mr. S. S. Johnson.*

For respondent there was a brief and oral arguments by *Mr. J. A. Benjamin,* Assistant Attorney General, *Mr. C. R. Peck* and *Mr. Frank S. Grant.*

HARRIS, J.—A proposal to amend the Constitution by adding Article XI–c so as to authorize the City of Portland to levy and collect a special tax to pay the expense of holding an exposition in 1925 was initiated by the Atlantic-Pacific Highway and Electrical Exposition and nine persons constituting the managing committee. On June 29, 1922, an initiative petition purporting to bear the signatures of 16,092 persons was presented to the Secretary of State and filed by him. Attached to the petition were the certificates of twenty county clerks, each of whom certified in the form required by law that he had compared the signatures on a certain number of sheets

of the initiative petition "with the signatures of said electors as they appear on the registration cards, books and blanks in" his office and that he believed the signatures of the designated number of signers "are genuine." Of the total of 16,092 names subscribed to the petition a total of 15,514 signatures were certified by the twenty county clerks. No names were certified by a notary public. An initiative petition, to be sufficient, must bear the signatures of 13,261 legal voters.

The complaint alleges that none of the county clerks

"at the time of making his or her such respective certificate, or prior thereto, did compare or had compared any of the names or signatures so respectively certified to by him or her with the signatures of electors appearing on the registration cards, books, or blanks in his or her office, but made said respective certificates without comparing said names, or any of them, with said signatures, or any of them."

It is further alleged that

"in truth and in fact each and every of said certificates of said county clerks was false and was not in accordance with the law and the statutes of the State of Oregon, and defendant was thereby deceived."

The plaintiff also avers that because of the alleged false certificates the "pretended initiative petition is not legally sufficient for an initiative petition"; and the plaintiff therefore prays for a decree restraining the Secretary of State from taking any further steps for the submission of the proposed measure to the people.

The defendant filed a motion to require the plaintiff to make the complaint more definite by alleging

"the name, address and precinct number of each petitioner to the petition described in said complaint who is claimed by the plaintiff to be an illegal voter."

The defendant presented the motion on the theory that "any petition which is signed by the requisite number of legal voters is a legally sufficient petition," and that

"before the plaintiff could make a showing of legal insufficiency, it is necessary to show that enough illegal voters signed the petition so that the remaining legal voters who signed the petition would not be the requisite statutory number."

The court ordered that the plaintiff make his complaint more definite, "by alleging the number of petitioners in each county which the plaintiff claims to be illegal voters and incompetent by reason thereof to sign said petition." The plaintiff declined to amend, and thereupon the court decreed that the suit be dismissed; and the plaintiff promptly appealed from the decree.

The contention of the plaintiff is that if the county clerks did not actually compare the signatures on the petition with the signatures of the electors as they appear on the registration cards, books and blanks in their respective offices, the petition is invalid, even though every one of the names included in such certificates was in truth the genuine signature of a legal voter. If this contention is sustained, then it is manifest that the decree should be reversed, because any inquiry concerning the names subscribed to the petition would have been immaterial. If, however, as claimed by the defendant, the impeachment of the certificates of the county clerk does not irresistibly establish the insufficiency of the petition, and if it devolves upon the party who assails the petition to present some issue affecting the genuineness of the signatures attached to the petition, then the decree should be affirmed.

The disputed question must in the final analysis be determined by whatever construction is placed upon Article IV, Section 1 of the state Constitution and upon Sections 4098 and 4099, Or. L., and particularly upon the two sections of the Code. Sections 4098 and 4099 are here reproduced, except, however, the portions of the forms for the affidavit of the circulator, and of the certificates of the county clerk and notary public which relate to the venue, the signatures of the subscribers to the affidavit and certificates, and the jurat.

"Sec. 4098. Verification of Petitions. Each and every sheet of every such petition containing signatures shall be verified on the face thereof in substantially the following form, by the person who circulated said sheet of said petition, by his or her affidavit thereon, and as a part thereof: * *

"I, ——, being first duly sworn, say: That every person who signed this sheet of the foregoing petition signed his or her name thereto in my presence; I believe that each has stated his or her name, postoffice address and residence correctly, and that each signer is a legal voter of the State of Oregon and county of ——. * *

"In addition to said affidavit the county clerk of each county in which any such petition shall be signed shall compare the signatures of the electors signing the same with the signatures of the registration cards, books and blanks on file in his office, shall carefully examine said petition and shall attach to the sheets of said petition containing such signatures, his certificate to the secretary of state, substantially as follows: * *

"To the Honorable ——, Secretary of State of Oregon:

"I, ——, county clerk of the county of ——, hereby certify that I have compared the signatures on (number of sheets) of the referendum (initiative) petition attached thereto, with the signatures of said electors as they appear on the registration cards, books and blanks in my office, and from such information as I

have been able to obtain I believe that the signatures of (names of signers) numbering (number of genuine signatures) are genuine. As to the remainder of the signatures thereon, I believe they are not genuine, except that the following names (——) do not appear on the registration cards, books and blanks in my office. * *

"Every such certificate shall be *prima facie* evidence of the facts stated therein and of the qualifications of the electors whose signatures are thus certified to be genuine, and the secretary of state shall consider and count only such signatures on such petitions as shall be so certified by said county clerk to be genuine; provided, that the secretary of state shall consider and count such of the remaining signatures as shall be proved to be the genuine signatures of legal voters. To establish such facts, the official certificate of a notary public of the county in which the signer resides shall be required as to the facts for each of such last named signatures. * *

"I, ——, a duly qualified and acting notary public in and for the above named county and state, do hereby certify: That I am personally acquainted with each of the following named electors whose signatures are affixed to the amended petition and I know of my own knowledge, that they are legal voters of the state of Oregon and of the county written after their several names in the annexed petition, and that their residence and postoffice address is correctly stated therein, to wit: (names of such electors). * *

"The county clerk shall not retain in his possession any such petition or any part thereof for a longer period than two days for the first two hundred signatures thereon, and one additional day for each two hundred additional signatures or fraction thereof, on the sheets presented to him, and at the expiration of such time he shall deliver the same to the person from whom he received it, with his certificate attached thereto as above provided. The forms herein given are not mandatory and if substantially followed in any petition, it shall be sufficient, disregarding clerical and merely technical error."

"Sec. 4099. *Mandamus* to Compel Filing—Jurisdiction and Procedure. If the secretary of state shall refuse to accept and file any petition for the initiative or for the referendum any citizen may apply, within ten days after such refusal, to the circuit court for a writ of *mandamus* to compel him to do so. If it shall be decided by the court that such petition is legally sufficient, the secretary of state shall then file it, with a certified copy of the judgment attached thereto, as of the date on which it was originally offered for filing in his office. On a showing that any petition filed is not legally sufficient, the court may enjoin the secretary of state and all other officers from certifying or printing on the official ballot for the ensuing election the ballot title and numbers of such measure. All such suits shall be advanced on the court docket and heard and decided by the court as quickly as possible. Either party may appeal to the supreme court within ten days after a decision is rendered. The circuit court of Marion county shall have jurisdiction in all cases of measures to be submitted to the electors of the state at large; in cases of local and special measures, the circuit court of the county, or of one of the counties in which such measures are to be voted upon, shall have jurisdiction; in cases of municipal legislation the circuit court of the county in which the city concerned is situated shall have jurisdiction."

It has been said that in the construction of a governmental document its history is the most satisfactory test of its meaning in the absence of direct, positive and unambiguous language. Although it is probable that not many persons could accept such a broad statement as a proper test in all cases, for the reason that the value of the historical argument is in each instance necessarily dependent upon the attending circumstances, it may be assumed that many will agree that the historical argument is usually helpful and ofttimes very persuasive. An examination of the

history of legislation enacted for the purpose of preserving the integrity of initiative and referendum petitions will, because of the attending circumstances, be materially helpful in the attempt to ascertain whether the legislature intended that the impeachment of the certificates provided for in Section 4098, Or. L., would conclusively establish the invalidity of an initiative petition.

The Constitution as amended in 1902 commanded that in submitting initiative petitions to the people the Secretary of State and all other officers "shall be guided by the general laws and the acts submitting this amendment, until legislation shall be especially provided therefor." It may be assumed, without deciding, that it is competent for the legislature to declare that certificates by notaries public and county clerks shall be the exclusive evidence by which not only the Secretary of State, but also the courts acting on cases presented to them, shall be governed in passing upon the legal sufficiency of an initiative petition; and, therefore, beginning with such assumption the investigation will proceed and be confined to an attempt to ascertain the legislative intent.

At the next session after the adoption of the initiative and referendum amendment to the Constitution, the legislature enacted a statute "making effective the initiative and referendum provisions" of the Constitution, "and regulating elections thereunder." Laws 1903, p. 244. Section 3 of this act provided for certificates of county clerks and for certificates of notaries public, with the further provision that certificates of county clerks "shall be *prima facie* evidence of the facts stated therein." Indeed, Section 3 of the act of 1903 is in all respects substantially the same as Section 4098, Or. L., except that the latter

does and the former did not require verification by the affidavits of the circulators of the petition.

Section 4 of the act of 1903 commanded the Secretary of State to

"decide in the first instance whether or not the petition entitled the parties to have the measure referred to the people * * and either the petitioners or the remonstrants, if any, may appeal to the supreme court of the state from the decision of the secretary of state."

In 1907 the legislature repealed the act of 1903 and in its stead enacted a more complete statute for carrying into effect the initiative and referendum powers: Chapter 226, Laws 1907. Section 4099, Or. L., is Section 4 of the act of 1907; and it is highly significant that this section has never been amended, while Section 3 of the act of 1907, now Section 4098, Or. L., was amended in 1913 and again in 1917. As originally enacted Section 3 merely required the circulator of the petition to verify the signatures by an affidavit, "on the back" of the petition, that the petitioners signed their names in his presence and that he believed that

"each has stated his name, postoffice address and residence correctly, and that each signer is a legal voter of the state of Oregon."

It is said that the county clerks protested against the law of 1903 "because of the extra labor it required from them when they were burdened with the nominating and general elections," and that because of such protest a change was made in 1907. However, the forged and fictitious names attached to referendum petitions in 1912 demonstrated the need of a stronger safeguard than was afforded by Section 3 of the act of 1907; and so in 1913 Section 3 of the

act of 1907 was amended by requiring the circulator
to verify the petition "on the face thereof" by an
affidavit substantially in the form now prescribed
by Section 4098, Or. L.: See *Friendly* v. *Olcott*, 61
Or. 580 (123 Pac. 53); *State ex rel.* v. *Olcott*, 62 Or.
277 (125 Pac. 303). In 1917 Section 3 of the act of
1907 was further amended by adding the now exist-
ing provisions concerning certificates of county clerks
and notaries public; and, as previously stated, these
provisions for such certificates are substantially the
same as the provisions found in Section 3 of the act
of 1903. Thus it is seen that the determination of the
Secretary of State has never been final and conclu-
sive, but there has always been a method provided
for re-examining his decision; under the act of 1903,
by an appeal to the Supreme Court; under the act
of 1907, by a lawsuit brought for the purpose of judi-
cially passing upon the legal sufficiency of the peti-
tion. Moreover, since Section 4099, Or. L., has never
been amended, but now reads the same as it did when
enacted it is reasonable to assume that if as origi-
nally enacted this section contemplated the right to
maintain a lawsuit and to offer evidence for and
against the legality of signatures it still contemplates
the right to prosecute a lawsuit to determine, with
the aid of all available evidence, whether a petition
is signed by legal voters.

Now let us give attention to Section 4099, Or. L.,
remembering throughout the examination that it is
now in its present form exactly the same as it has
always been since 1907 when it was enacted. This
section anticipates the possibility of the refusal of
the Secretary of State to file a petition and accord-
ingly declares that any citizen may by *mandamus* test
the legal sufficiency of a petition; and so, too, this

section anticipates the possibility of the Secretary
of State filing a petition which is not legally suffi-
cient, and accordingly, "the court may enjoin" the
Secretary of State and all other officers from certify-
ing or printing the title and numbers of the measure
on the official ballot "*on a showing* that any petition
filed is not legally sufficient." The Secretary of State
can be compelled to file a petition only "when it is
legally sufficient"; and he can be enjoined only when
it is "not legally sufficient." Whether the proceeding
is one for a writ of *mandamus* or for an injunction,
the inquiry made by the court is: Is this petition
legally sufficient? In *State ex rel.* v. *Olcott,* 62 Or. 277,
279 (125 Pac. 303), construing Section 3474, L. O. L.,
now Section 4099, Or. L., it was held that the words
"legally sufficient" meant "a valid petition, signed
by legal voters, and complying substantially," not
necessarily technically, "with the requirements of the
law." In other words, a petition to be legally suffi-
cient must be: (1) In form substantially as pre-
scribed by statute; and (2) signed by the required
number of legal voters. While the question is not
here for decision, the writer is of the opinion that a
petition without the affidavit of the circulator or a
petition having the affidavit of the circulator, but
without the certificate of a county clerk or notary
public would be legally insufficient, because not in
the form required by statute and because without
any evidence concerning the signatures of the peti-
tioners and in such a case it would be the duty of
the Secretary of State to refuse to file the petition
and it would likewise be the judicial duty of the
courts to declare that such petition is "not legally
sufficient."

1. Manifestly Section 4099, Or. L., contemplates
that the courts may inquire and judicially ascertain

not only whether an initiative petition is presented
in a form substantially like the form prescribed by
the statute, but also whether it is signed by a suffi-
cient number of legal voters. Under the act of 1907
as it read prior to the amendment of 1913 a petition
which bore the outward appearance of a legally suffi-
cient petition could be subjected to judicial scrutiny
and the courts were empowered to ascertain whether
such seemingly sufficient petition bore forged or fic-
titious signatures. The affidavit of the circulator
was only *prima facie* evidence; it was not conclusive
evidence: *State ex rel.* v. *Olcott,* 62 Or. 277, 279 (125
Pac. 303). Section 4099, Or. L., contemplates that
whenever an appropriate judicial proceeding is
initiated and prosecuted either to compel the filing
of a petition or to restrain the Secretary of State
from taking further steps with a petition which he
has filed, the court can inquire whether the petition
is signed by a sufficient number of legal voters; and
this judicial inquiry can only be prosecuted upon
pleadings and the truth can be ascertained only by
the aid of evidence concerning not only the legality
but also the illegality of the signatures. Section
4099, Or. L., is utterly devoid of any suggestion or
intimation that no evidence can be offered concern-
ing the legality of the signatures; but upon the con-
trary this section standing alone implies that the
question of the legality of the signatures is triable
according to the established rules of pleading and
evidence which ordinarily prevail in a lawsuit. In
short, if the proponents of a petition offer it for
filing and the Secretary of State refuses to file it,
they must allege and prove that the petition is suffi-
cient, and in such a case the proponents present a
*prima facie* case when they offer a petition which in

105 Or.—32

form is substantially as prescribed by the statute; and so, too, if a petition filed by the Secretary of State is assailed on the ground that it is not legally sufficient those who assail such petition must allege such insufficiency. Indeed, Section 4099, ·Or. L., implies the necessity of allegation and proof, for the language of this section is: *"On a showing* that any petition filed is not legally sufficient."

2. In the instant case it is not alleged that the petition contains the signatures of any who are not legal voters. The attack made against the petition is confined to the charge that the county clerks made the certificates without comparing the signatures on the petition with the signatures of the electors as they appear on the registration cards, books and blanks. It is argued by the plaintiff that proof that the county clerks did not make such comparison invalidates the petition notwithstanding it is sufficient as to form and is signed by the required number of legal voters. This contention rests upon the language employed in Section 4098, Or. L.

It is declared in Section 4098, Or. L., that the certificates of the county clerk

"shall be *prima facie* evidence of the facts therein, and of the qualifications of the electors whose signatures are thus certified to be genuine."

The county clerk is a witness and his certificate furnishes evidence of his qualification to speak as a witness and is also evidence concerning the signatures attached to the petition. If the certificate is sufficient in form it presents: (1) Evidence of the qualification of the witness to testify concerning the signature to the petition; and (2) evidence that the signatures attached to the petition are the genuine signatures of legal voters. But this evidence concerning his qualification as well as concerning the genuine-

ness of the signatures is only *prima facie* evidence of such facts, and the circumstance that it is *prima facie* evidence necessarily implies that such evidence may be contradicted in an appropriate judicial proceeding not only as to the qualifications of the witness, but also as to the legality of the signatures; and assuredly if it may be contradicted it may be supported by other evidence in such judicial proceeding, for the language *"prima facie* evidence of the facts stated therein" imply the right to offer supporting evidence just as strongly as it implies the right to offer contradicting evidence. Nowhere is it stated expressly or impliedly that only such extraneous evidence may be offered in a judicial proceeding as tends to contradict the *prima facie* evidence of the certificate. When a petition bearing the requisite number of signatures and in form substantially like the form prescribed by the statute and therefore bearing *prima facie* evidence of the legality of the signatures is presented to the Secretary of State he is warranted in filing it, because he looks to the petition itself and not to extraneous evidence for his warrant for filing the petition. If, however, as is the case here, a seemingly sufficient petition is assailed after it has been filed by the Secretary of State but before it has been submitted to the people and acted upon by them at an election, extraneous evidence may be offered in contradiction and in support of the evidence in the certificate concerning the qualification of the county clerk and also in contradiction and in support of the evidence concerning the legality of the signatures.

3. The complaint in the instant case merely alleges that the county clerk as a witness was not qualified to testify concerning the legality of the signatures. The complaint attacks the evidence of legality and not the legality of the signatures. The end sought

to be attained is the signing by a sufficient number of legal voters. The affidavit of the circulator and the certificates of county clerks and notaries public are mere forms and evidence designed to accomplish the end sought to be attained. The affidavit and the certificates are forms while the signatures of legal voters are the substance.

The complaint in the instant case attacks the *prima facie* evidence of the legality of the signatures and does not present any issue as to whether the signatures are in truth the signatures of legal voters. Genuine signatures of legal voters constitute the vitalizing element of a petition, and all else is mere form and evidence. Even though the *prima facie* quality of the evidence furnished by the certificate of the county clerk is destroyed by proof that he did not qualify himself to speak as a witness by making the comparison required by statute, there yet remains a petition sufficient in form, and if the petition is in truth signed by a sufficient number of legal voters, it is a legally sufficient petition within the ruling expressed in *State ex rel.* v. *Olcott,* 62 Or. 277, 279 (125 Pac. 303). Impeachment of the evidence furnished by the certificate does not foreclose inquiry concerning the truth; and the truth can be learned only by a consideration of all available evidence relating to the genuineness of the signatures. In my opinion, Section 4099, Or. L., of itself plainly implies the right of trial in a court according to established rules of procedure at which those who assail the petition may offer evidence of the illegality of the signatures and those who seek to sustain the petition may offer evidence of the legality of the signatures; and when Section 4098, Or. L., is considered in the light of its history and in connection with Section 4099, Or. L., the implication becomes still

stronger. In short, a complaint which merely alleges that the county clerk who made a certificate did not compare the signatures in the mode prescribed by statute is only an attack upon evidence and not an attack upon substance, and does not state a cause of suit; but to be a good complaint it must contain an allegation attacking the signature attached to the petition.

4. Upon proof that the county clerk did not compare the signatures in the mode required by the statute his certificate loses its *prima facie* quality, and the defendant must then, as ruled in *State ex rel.* v. *Olcott,* 62 Or. 277, 285 (125 Pac. 303), go forward and offer evidence tending to establish the legality of the disputed signatures: See, also, *Askay* v. *Maloney,* 92 Or. 566, 575 (179 Pac. 899); *Hansen* v. *Oregon-Wash. R. & N. Co.,* 97 Or. 190, 211 (188 Pac. 963, 191 Pac. 655); *Simms* v. *Sullivan,* 100 Or. 487, 494 (15 A. L. R. 678, 196 Pac. 240); *State* v. *Rosasco,* 103 Or. 343 (205 Pac. 290, 295). A careful analysis of the opinion in *State ex rel.* v. *Olcott,* 62 Or. 277 (125 Pac. 303), will show that nearly every question involved in the instant case is decided by that precedent.

The trial court properly ruled that the plaintiff ought to make some allegation concerning the legality of the signatures. However, the plaintiff ought not to be permitted to make a blanket allegation that all the signatures are illegal, but he should be required to aver the illegality of a sufficient number of signatures to invalidate the petition and to allege the number of signatures in each county claimed to be illegal. Each case must depend to some extent upon its own circumstances and much must be left to the judicial discretion of the trial court when the pleadings are framed. If a petition is sufficient in form

then the ultimate inquiry is: Are there sufficient genuine signatures of legal voters to make the petition "legally sufficient"? The plaintiff refused to present by pleading or otherwise any issue concerning the validity of signatures; and consequently the Circuit Court properly dismissed the suit. The decree ought to be affirmed.      AFFIRMED.

BURNETT, C. J., Dissenting.—This is a case where the state on the relation of its law officer, the district attorney, is endeavoring to enjoin the Secretary of State from ignoring the procedure laid down by the Constitution and laws governing the exercise of the initiative process. In substance, the complainant charges that the certificates of the county clerks authenticating the initiative petitions in question herein are false in that the said clerks did not as they say they did compare any of the signatures to the petitions with the signatures of the electors on the registration cards on file in the respective county clerks' offices, and that, in spite of such falsity, the Secretary of State, defendant, is about to act on the petitions thus falsely verified and send to the various county clerks the ballot title of the proposed initiative measure to be printed upon the ballots for the next general election.

In addition to the quotation from the fundamental law and the statutes in the opinion of Mr. Justice HARRIS, this excerpt from Section 1-a of Article IV of the Constitution respecting the initiative and referendum powers is here set down:

"The manner of exercising said powers shall be prescribed by general laws."

It may be noted in passing, that the Constitution of Montana alluded to in *State ex rel. v. Stewart,*

57 Mont. 397 (188 Pac. 904), cited by Mr. Justice BEAN, does not contain this provision.

In pursuance of the authority vested in it by the Constitution, the legislative assembly of 1903 passed an act regulating the exercise of the initiative power. In that act there was required as authentication the certificate of the county clerk to the effect that he had compared the signatures on such a petition with the signatures of the electors appearing on the registration books and cards in his office, and this was supplemented by the requirement that all other names on the petition that were to be counted should be authenticated by the certificate of a notary public. This act was repealed in 1907 and another passed in its stead, making the affidavit of the circulator of any petition a sufficient authentication, thus relieving the county clerk and notaries public from any duty in respect thereto. The legislative assembly, however, by the act of February 17, 1917, Chapter 176, Laws of 1917, restored and re-enacted that requirement of certificates of county clerks and notaries public as now codified in Section 4098, Or. L.

It is said in Section 4099, Or. L., that "on a showing that any petition filed is not legally sufficient, the court may enjoin the Secretary of State and all other officers from certifying or printing on the official ballot for the ensuing election the ballot title and numbers of such measure." The question arises: What is a petition "not legally sufficient" in order to sustain an injunction? The requisites of the petition are laid down in Sections 4095–4098, inclusive. In view of the authority of the legislative department to prescribe the manner of exercising the power, it is competent for the law-making department of the government to compel not only certain details with reference to the petition itself, but also as part

thereof the affidavit of the circulator and the certificates of the county clerk or notaries public. It is indeed true that the law has said, ''the forms herein given are not mandatory, and if substantially followed in any petition, it shall be sufficient, disregarding clerical and merely technical error.'' This refers, however, only to the forms themselves and not to the substance of the statute. ''Each and every sheet of such petition containing signatures *shall* be verified on the face thereof.'' ''In addition to said affidavit, the county clerk of each county in which any such petition shall be signed *shall* compare the signatures of the electors signing the same with the signatures on the registration cards, * * *shall* carefully examine said petition and *shall* attach to the sheets of said petition containing such signatures, his certificate to the Secretary of State.'' Moreover, with reference to such names as the county clerk has been unable to certify in the manner referred to, the certificate of a notary public in the county in which the signer resides shall be ''required.''

These provisions are mandatory and not merely directory. Else, why should it be commanded in the statute that the Secretary of State shall ''consider and count only such signatures on such petitions as shall be so certified by said county clerk to be genuine?'' And why is it said as to the other names that the certificate of the notary public ''shall be required''? It is plain that the Secretary of State shall have before him and shall count only names which are truly certified by the county clerk, or else authenticated by the certificate of a notary public based on his personal knowledge. The secretary has no right to act upon any other evidence. Shall it be said that a certificate false in fact is a compliance with the

law, if it is fair upon its face? Is a false certificate as potent as a true one? Are such certificates merely formal or optional in face of the provision that the notaries' certificates are required and that the Secretary of State shall count no names except those authenticated by the clerk or proved by the notaries? Shall courts assume to disregard the requirements of the statute and either compel or allow the Secretary of State to count names on untrue certificates? Shall we overlook the fallacious certificates, cause to be framed an issue as to the genuineness of any number of signatures, and work out an authentication of them on our own account which the Secretary of State must adopt in lieu of the verification required by law?

It is not by the mark to assert that ''the complaint attacks the evidence of illegality, and not the illegality of the signatures.'' The effort of this litigation is to keep the Secretary of State in the beaten track prescribed by the statute. The object of the legislation is to make it reasonably practicable to compel an observance of the law and to protect the general public from wholesale frauds such as were practiced in 1912 with respect to the referendum on the appropriation for the state university. The genuineness of the signatures is not the sole issue that can be raised. It is a fallacy to say that ''a petition to be legally sufficient must be (1) in form substantially as prescribed by the statute, and (2) signed by the required number of voters.'' This theory utterly ignores the authenticating certificates. If those can be regarded as merely formal and no more, we are perforce degraded to the condition of affairs where the general public was subject to the fraudulent practices of those who procure signatures for hire, which makes it impracticable to contest the initiation or

referendum of any measure on account of the great number of names and the expense involved in searching out evidence to establish the fraud. Under the later statute, the petition may be attacked on any feature which is defective, and the challenger is not confined to the sole issue of whether or not the signatures are genuine.

The argument of the majority proceeds on the theory that we have before us a petition and verification fair on its face, and that the only thing to be investigated is whether or not the signers were legal voters. In *State ex rel.* v. *Olcott,* 62 Or. 277, 278 (125 Pac. 303), Mr. Justice McBRIDE used this language:

"On behalf of defendant it is contended that, by the words 'legally sufficient,' as here used, it is meant that the petition shall be regular upon its face, and that, if a petition, regular upon its face, shall be presented, the court cannot go behind its apparent regularity to inquire into its genuineness. We cannot assent to this view. * * This would be giving a forced and unnatural construction of the law in favor of fraud. The legislature never contemplated such a vicious construction. We are of the opinion that by the term 'legally sufficient' the legislature meant to describe a valid petition, signed by legal voters, and complying substantially, not necessarily technically, with the requirements of the law."

The law mandatorily requires certain types of authentication. Since these are demanded, and the Secretary of State is forbidden to count any names except those attested either by the county clerk's certificate or that of notaries public, we are not at liberty to ignore those requirements. They are essentials going to make up the term "legally sufficient." If the secretary may act on false certificates, he may proceed without any certificate whatever.

Much has been said in argument about the constitutional right of a legal voter to initiate measures or to invoke the referendum upon others. This right, however, is governed and affected by all the provisions of the Constitution and the legislation enacted in pursuance thereof. The method of exercise prescribed by the statute is the measure of the power. It goes without saying that a contestant may assail the genuineness of the signatures, but that is not the only ground of attack; otherwise, all certificates whatsoever named in the statute may be ignored, and any contestant may be driven to the Herculean task of directly challenging thousands of names. This legislation was designed to suppress fraud and to protect the general public from the confusion brought about by the unbridled activity of an insignificant minority in the matter of promulgating new legislation.

The true issue in this case is whether or not the Secretary of State shall be permitted to base his action upon false certificates. Analogous to the evidence prescribed by the statute of frauds, the proof of a writing by subscribing witnesses only, the proof of usage or perjury by two witnesses, and the precept that proof of publication shall be by the printer or his foreman or his principal clerk, the law has prescribed certain requirements in the form of the certificates mentioned, which are the *sine qua non* upon which alone the Secretary of State may act in counting the names upon petitions. The state on the relation of its district attorney has the right to attack those certificates, which are integral parts of the petition, on any defect in them which can be shown. He can destroy the petition by destroying the prop, or verification, which sustains it. The averments of the complaint disclose that the certificates of the

county clerk are untrue. No reliance upon such certificates ought to be permitted. The people are not given the protection against fraud which the statute affords, unless those certificates are actually true. The issue in this case was not framed upon the ultimate verity of the signatures. The complaint challenged the equally important feature, so far as the public is concerned, that before the expense and confusion attendant upon the initiative process should be visited upon the people, the petition should be authenticated in the manner prescribed by the legislature.

The result of the majority opinion is, to disregard the value of the certificates, treating them as mere matter of form without other consequence, and to substitute for them a finding of the court from other evidence and impose it upon the Secretary of State in lieu of the certificate required. It is competent for the legislative power to prescribe the certificates as proper ingredients of the manner in which the initiative is to be exercised, and courts and officers should respect its mandate. For these reasons I dissent from the conclusion reached by the majority of my associates. The decree of the Circuit Court ought to be reversed.