Argued September 22; reversed September 23, 1936; rehearing
denied January 12, 1937

## STATE ex rel. TRINDLE v. SNELL

(60 P. (2d) 964)

In Banc.

*W. S. U'Ren* and *Jay Bowerman,* both of Portland
(Galloway & Krier, of The Dalles, on the brief), for
appellant.

*Wm. P. Lord,* of Portland (T. Walter Gillard, of
Portland, on the brief), for respondents Storvik and
Roden.

*Francis T. Wade,* of Salem, for respondent Snell.

ROSSMAN, J. This is an appeal by the plaintiff (State of Oregon on relation of William H. Trindle as District Attorney of the State of Oregon for the County of Marion) from a decree of the circuit court in favor of the defendants Earl Snell, secretary of state, E. A. Storvik and George A. Roden, sponsors of an initiative petition entitled, "Bill Forbidding Columbia River Fishing with Seines and Fixed Appliances". The decree declined to grant the plaintiff the relief it sought: an injunction to prevent the Secretary of State from certifying the proposed measure to the county clerks for the election to be held in November, 1936. In January, 1936, the defendants Storvik and Roden, to whom we shall hereafter refer as the defendants, became the sponsors of the aforementioned initiative petition. Later, 18,696 signatures became attached to the bill. The necessary number was 16,371. June 27, 1936, the petition was filed with the secretary of state. August 10, 1936, the relator filed a complaint which instituted the suit now under review which particularly attacks the legality of the circulators' certificates (§ 36-2004, Oregon Code 1930) forming a part of the petition. From it we quote:

"Said sponsors presented to the county clerks of many counties in the state of Oregon a large number of sheets of alleged signatures on said initiative petition, to-wit: 520 sheets bearing the alleged signatures of a large number, to-wit, more than 10,000 alleged legal voters of Oregon; but which sheets were not, nor any of them, circulated by the alleged and pretended circulators thereof, as required by law, or at all; that in truth and in fact the signers of said circulators' affidavits did not see any of the alleged signers of any of said sheets sign said initiative petition, and in truth and in fact none of the aforesaid signatures were written on any of said sheets in the presence of the persons who made said affidavits; that one Paul Marincovich

made his affidavits that the signatures of more than 1,650 persons on said sheets were written in his presence, but said affidavits were wholly false and in truth and in fact he did not see any of said signatures written, nor were any of them written in his presence; that the said E. A. Storvik made his affidavits that the signatures of, to-wit: 5,000 persons on said sheets were written in his presence, but said affidavits were wholly false and in truth he did not see any of said signatures written, nor were any of them written in his presence, and that other persons whose names plaintiff has not yet been able to learn made similar false and fraudulent affidavits at the request of and with the knowledge of said sponsors, and each of them.

"That one C. H. Barrett and one James T. Whitney circulated said initiative petition and obtained a large number, to-wit: 2,560 alleged signatures of legal voters on said petition and the said C. H. Barrett attempted to make his affidavit on each sheet so circulated that the signers thereof signed their names on said petition in his presence, but said affidavit was false and fraudulent in this, to-wit, that not more than 800 of said alleged signatures were written in his presence, if at all, and that not more than 800 of the remaining alleged signatures were written in the presence of the said James T. Whitney, but that in fact the said Barrett and Whitney left said petitions at cigar stores, grocery stores, and other places where they were signed, if at all, without the knowledge and not in the presence of said parties. * * *

"That said E. A. Storvik and George A. Roden knew the truth when they presented to the defendant Secretary of State, and filed in his office the said false and fraudulent initiative petition, and that at the time of presenting said initiative sheets of said petition to the several county clerks for verification of signatures by said county clerks, said sponsoring defendants knew that the affidavits of E. A. Storvik, Paul Marincovich, C. H. Barrett and many others were false and fraudulent and that the statements therein made were not true, and thereby perpetrated and intended to perpetrate

a fraud upon the people of Oregon by the submission of said false and fraudulent initiative petitions.   *   *   *

"That in truth said initiative petition contains less than 9,000 signatures of legal voters of the State of Oregon that were duly and truthfully verified by the affidavits of circulators of said petition, are required by law, and thereby entitled to be counted as legal petions for said initiative bill."

We omit mention of other charges alleged in the complaint. The wrongs alleged by the relator are denied in the answer filed by the defendants.

The following is an indication of the developments disclosed by the evidence: A 17-year old girl, named Catherine Atzberger, obtained 260 signatures on one group of sheets, but signed none of the circulators' certificates.   The sheets containing these signatures somehow made their way into the hands of the defendant Storvik whom Miss Atzberger had never seen. Storvik, although not present when the signatures were affixed to the petition, nevertheless signed the certificates.   Miss Atzberger obtained 160 signatures on some additional sheets which later became a part of the petition.   These sheets made their way to one Paul Marincovich with whom Miss Atzberger was unacquainted.   Marincovich was not present when the signers signed these petitions.   Nevertheless, he made the certificates.   Without setting forth any further review of the evidence, we express our conclusion that approximately 3,700 of the signatures to the petition are affected by false and perjured certificates.   We express the further conclusion that those who made the false certificates were fully aware of the illegality of the course which they were pursuing.   Forming a part of the petition are certificates from the appropriate county clerks in which each has signed the certificate required by § 36-2004, Oregon Code 1930.

The relator contends that, due to the perjured circulators' certificates, the State is entitled to the relief sought in this suit; that is, a decree enjoining the secretary of state from certifying the petition and ballot title to the county clerks for the election to be held in November, 1936. The defendant contends that, since the several county clerks signed the certificates required of them by the aforementioned section of our laws, the unlawful conduct of the circulators is immaterial, and the plaintiff is not entitled to the relief which it seeks.

Section 36-2004, Oregon Code 1930, provides:

"Each and every sheet of every such petition containing signatures shall be verified on the face thereof in substantially the following form, by the person who circulated said sheet of said petition, by his or her affidavit thereon, and as a part thereof:

State of Oregon, ⎱
County of ——— ⎰ ss.

"I, ———, being first duly sworn, say: That every person who signed this sheet of the foregoing petition signed his or her name thereto in my presence; I believe that each has stated his or her name, post-office address and residence correctly, and that each signer is a legal voter of the State of Oregon and county of ———.

——————— (Signature and post-office address of affiant.)

Subscribed and sworn to before me this — day of ——— A. D. 19—.

(Signature and title of officer before whom oath is made and his post-office address.)

In addition to said affidavit the county clerk of each county in which any such petition shall be signed shall compare the signatures of the electors signing the same with the signatures of the registration cards, books and blanks on file in his office, shall carefully examine said petition and shall attach to the sheets of

said petition containing such signatures, his certificate to the secretary of state, substantially as follows: * * *

Every such certificate shall be prima facie evidence of the facts stated therein and of the qualifications of the electors whose signatures are thus certified to be genuine, and the secretary of state shall consider and count only such signatures on such petitions as shall be so certified by said county clerk to be genuine; * * *"

The requirement for the circulator's certificate made by this section of our laws has been a part of our statutes ever since the year 1907. See Session Laws 1907, chapter 226, § 3. A requirement for the county clerk's certificate was a part of the original Enabling Act. See 1903 Session Laws, § 3, page 244. The 1907 Session Laws, chapter 226, repealed the provision just mentioned. Numerous frauds in the circulation of referendum petition in the year 1912 created a demand for the reenactment of the provision safeguarding petitions with county clerks' certificates, and, hence, the 1917 legislative assembly returned to our laws the requirement for the county clerk's certificate. See 1917 Session Laws, chapter 176, § 1. The historical development of the initiative and referendum enactments is set forth in *State ex rel. Carson v. Kozer,* 105 Or. 486 (210 P. 179). It will be observed that the requirement for the circulator's certificate has been kept intact throughout the years, and, by returning to 1917 Session Laws, chapter 176, § 1, it will be seen that when the county clerk certificate requirement was again enacted the legislature reaffirmed its belief in the efficacy of the circulator's certificate requirement by referring to it in the following words: "In addition to said affidavit, the county clerk * * *."

The certificates required of the circulator and of the county clerk are not identical. The former's is

under the oath of the circulator; the latter's is not under oath and is addressed to the secretary of state. Both certificates serve the same purpose—the prevention of fraudulent conduct in the exercise of the initiative and referendum powers. The circulator manifestly could not truthfully sign the county clerk's certificate, and the latter official could not truthfully sign the circulator's affidavit. The circulator must be present when the petitioner signs, and, hence, § 36-2004 exacts of him a statement under oath that he was present. The county clerk can not efficiently perform his duty of checking the petitions unless the petitioner signed his true name, entered upon the petition his correct address, etc. It is the duty of the circulator to see to it that this is done, and, in order to assure performance of this task, § 36-2004 exacts of the circulator an affidavit that "I believe that each has stated his or her name, post-office address * * *". In order to save the county clerk the needless task of checking over the names of those who are not entitled to vote, our laws also provide that the circulator shall obtain signatures from only legal voters and exacts of him under oath a statement "that each signer is a legal voter of the state of Oregon and * * *". But the concern of the law goes beyond consideration for the county clerk. Its greatest concern is to prevent imposition upon the state and upon the voters. The initiative and referendum powers belong to the voters, and not to those who desire to gain an advantage through the exercise of fraud and perjury. The safeguards created by § 36-2004 are intended to place upon the ballot only measures for which there is a genuine demand. It will be observed that when the state addresses itself to the purpose described above it must depend largely upon the circulator, and, hence, it exacts of him not only a

duty but also an affidavit that he has done his duty. The county clerk merely checks over the material handed to him by the circulator and endeavors to ascertain from the meager information available whether the signatures upon the petition are genuine, and whether the other information gained by the circulator is correct. The county clerk, however, is not a handwriting expert, and, hence, we repeat that the safeguard of the ballot is largely dependent upon the circulator's respect for the duties exacted by § 36-2004. Enough has been said to indicate that the two certificates are not counterparts, and that the circulator's affidavit is not superfluous.

Section 36-2005, Oregon Code 1930, provides that the secretary of state must file initiative and referendum petitions that are "legally sufficient", and that upon "a showing that any petition filed is not legally sufficient", he may be enjoined from recognizing it as sufficient. In the following decisions this court indicated that before a petition could be legally sufficient for the exercise of the initiative or referendum powers it must bear the truthful certificates of the circulators who obtained the signatures of the petitioners: *State ex rel. Carson v. Kozer,* 105 Or. 509 (210 P. 172) ; *State ex rel. Carson v. Kozer,* 105 Or. 486 (210 P. 179), and *State v. Olcott,* 62 Or. 277 (125 P. 303).

But the defendants, in support of their argument that the return of the requirement for the county clerk's certificate made by 1917 Session Laws, chapter 176, § 1, has rendered superfluous the circulator's affidavit, depend almost entirely upon *State ex rel. Carson v. Kozer,* 105 Or. 486 (210 P. 179). We have just seen that in that decision, of which Mr. Justice HARRIS was the author, this court declared that truthful affidavits of the circulators are necessary to the legal

sufficiency of the petition. Possibly, some of the language of that decision lends itself to the defendants' purpose; but the decision in its entirety does not. That decision was concerned with a complaint which attacked an initiative petition upon the ground that, while the various appropriate county clerks had attached their certificates to the petition, each had failed to check the signatures upon the petition with the voters' signatures in his registration files. No contention was made that the petitioners were not qualified electors, that an insufficient number had signed, or that the circulators had failed to sign the necessary affidavits. The sole charge was that the county clerks, although signing the required certificates, had failed to perform duties exacted of them by the statute under review. Thus, the plaintiff in that suit attacked the certificate over which the petitioners had no control, but in no manner claimed that the petition was otherwise insufficient. The decision affirmed the lower court's order sustaining a demurrer to the complaint. In *State ex rel. Carson v. Kozer*, 105 Or. 509 (210 P. 172), Mr. Justice McBRIDE, referring to the decision under review, said: "The petitioners had no control over the county clerks who, it was alleged, had certified to the genuiness of the names on the petitions involved there, and could not in any way be held accountable for their negligence." Mr. Justice BEAN added: "The constitutional right of electors to sign such a petition and have their signatures counted should not be thwarted by any careless, ignorant or even willful act of a ministerial officer." To this Mr. Justice HARRIS, author of the decision upon which the defendants rely (*State ex rel. Carson v. Kozer*, 105 Or. 486 (210 P. 179)), added: "I agree with substantially all of the reasoning employed by Mr. Justice BEAN, and I concur in the conclusion expressed

by him.'' In other words, any other holding would have deprived the petitioners of a constitutional right through the neglect of a ministerial officer to perform a duty. However, in the case now before us, the defect of which the relator complains is due to the willfulness and wantonness, not of a public officer but of the circulators who, as Mr. Justice McBride stated in *State ex rel. v. Olcott,* supra, ''is the agent of the signer''.

██ Before the secretary of state could do other than file the petition presented to him by the defendants it was necessary that the petition be ''legally sufficient''. The secretary of state is a ministerial officer who has no right to waive any requirement set forth in § 36-2004. The requirements of that section of our laws are clearly expressed and contemplate that those who desire to avail themselves of the initiative and referendum powers must file petitions in compliance with that law. This petition while legally sufficient in form was not legally sufficient when the facts concerning it had become known. An untruthful affidavit does not suffice. It is worse than none whatever.

The above, being our conception of the law, it follows that the plaintiff is entitled to the relief demanded in its complaint. Other matters argued in the briefs have received careful consideration, but we deem it unnecessary, due to the shortness of time, to express an opinion concerning them. Opinions concerning all of them will be found in the decisions previously cited.

CAMPBELL, C. J., and KELLY, BEAN, BAILEY and RAND, JJ., concur.