**In re Petition for Removal of Frank Bower, Jerry D. Black, Bernard Edwards, Forrest Bunting, and John Ginder, Objectors-Appellants.**

**Gen. No. 67–36.**

Fifth District.

December 30, 1967.

Rehearing denied February 2, 1968.

Paul A. Croegaert, of Olney, for appellants.

Fred McCollum and James B. Moses, of Smith, McCollum & Riggle, of Flora, for appellees.

MORAN, J.

Objectors appeal from a decree of the Circuit Court of Richland County upholding the sufficiency of five peti-

tions for recall filed pursuant to Division 7, Article 4 of the Illinois Municipal Code.

Section 4-7-1, chapter 24, Illinois Revised Statutes, 1965, relating to the removal of officers in commission from municipalities provides:

"Every incumbent of an elective office, under this article, except a judicial officer and an officer of a court, whether elected by a popular vote or appointed to fill a vacancy, is subject to removal at any time by the electors qualified to vote for members of the council. The procedure to effect the removal of an incumbent of such an office shall be as prescribed in Sections 4-7-1 through 4-7-5."

The initial procedure to effect this removal is provided in section 4-7-2 of the statute and requires the filing, with the municipal clerk, of a petition signed by electors amounting to at least 45% of the number of votes cast for Mayor at the last preceding general quadrennial municipal election. This subsection of the statute also provides that the petition "shall contain a general statement, of not more than 200 words, of the reasons for which the removal is sought."

Separate petitions were filed in the office of Kathryn Flanders, City Clerk, on September 14, 1966, demanding an election on the question of removal from office of Mayor Frank Bower and Commissioners Jerry D. Black, Bernard Edwards, Forrest Bunting and John Ginder. No charges of malfeasance or misfeasance in office were made and the reasons for seeking the election were identical on each petition and are as follows:

"1. Refusal to permit electors of Olney to vote on an ordinance for the issue of waterworks revenue bonds and the proposed lake and other construction mentioned in the ordinance, (Ordinances

66–21 and 66–26), in spite of repeated petitions by the electors.

"2. Willingness to impose on the people who use water and sewer in Olney high rates which are unnecessary and which impose hardship on residents with low and fixed incomes.

"3. Willingness to disregard expressed wishes of more than 1,500 persons to save Bird Haven in its natural state.

"4. Efforts to relocate the city dump to land near the west edge of Olney directly north of Route 250 where it will be a nuisance to residents in the western part of Olney and a pollution hazard to Fox Creek."

Within the five days allowed by chapter 24, section 4–7–4 of the statute, identical objections were filed attacking the validity of the petitions and the petitions and objections thereto were consolidated for hearing in the Circuit Court of Richland County and for purposes of this appeal. It was stipulated that for the purpose of the hearing, the evidence presented as to the petition regarding Mayor Frank Bower and the court's ruling thereon would be the same on the remaining four petitions if the same issues were raised and evidence presented thereon. It was further stipulated that the number of signatures required on each of the petitions was 1,458.

The original petition against Mayor Frank Bower consisted of 115 sheets containing thereon 1,710 signatures. The original petition against Commissioner Jerry D. Black consisted of 117 pages containing thereon 1,723 signatures. The original petition against Commissioner Bernard Edwards consisted of 115 pages containing thereon 1,708 signatures. The original petition against Commissioner Forrest Bunting consisted of 115 pages containing thereon 1,679 signatures. The original petition against Commissioner John Ginder consisted of 116 pages containing thereon 1,744 signatures.

Appellants first contend that the general statements of the reasons for which the removals are sought are insufficient because they do not charge acts or failure to act, which constitute misfeasance, malfeasance or nonfeasance in office. The Act does not specifically require that the recall be based upon misconduct in office. There are no Illinois decisions construing the requirements of the removal statute. In the instant case the trial court reached the following conclusion:

> "However, I want to state for the record that I consider the grounds stated in the petitions to be legally insufficient to justify removal of the officers named in the petitions, but as I construe the law applying to this issue, it is not a matter for me to determine but rather one for the electorate."

In 28 Am Jur, Initiative, Referendum and Recall, § 60, p 476, the following is stated:

> "Where, however, petitioners are required to state only generally their grounds or reasons for demanding a recall, the petition need not state the cause for removal with the same particularity as would be necessary in pleading in a judicial pleading, the purpose of such statement being to furnish information to the electors upon which a political and not a legal issue may be raised at the election.
>
> "Under a statute providing that the statement of grounds or reasons for the recall is solely for the information of the electors, it has been held that the question of the sufficiency of the grounds is a question for the electors and not for the court."

In 62 CJS, Municipal Corporations, § 516, page 961, the same general rule is contained:

> "Where the charter requires only that the petition shall contain a general statement of the grounds of dissatisfaction on which the removal is sought, it is

67

> sufficient that it appears in general terms that the official conduct of the officer whose recall is sought has been in opposition to the will and preferences of his constituents and obstructive to the best interest of the city. Under such provision it is the province of the electors, and not of the court, to determine the sufficiency of the grounds relied on for removal."

Appellants point out that there are several jurisdictions in opposition to the view that the grounds for the recall of an official are purely political in nature. Yet this result is usually based upon a specific statutory or constitutional provision which requires an allegation of misfeasance, malfeasance or nonfeasance. See, e. g., Minn Const 13, § 2; Cudihee v. Phelps, 76 Wash 314, 136 P 367. Also such a result may be arrived at because of the ease of initiating the recall procedure. For example, in Tolar v. Johns (Fla App), 147 So2d 196 (1962), only 200 signatures were required to initiate a petition in the city of Fort Lauderdale. This might also have been a factor in Joyner v. Shuman (Fla App), 116 So2d 472 (1959), where signatures of only 20% of the electors were required.

■ Section 4–7–9 of the Municipal Code provides that no remand petition shall be filed against any officer until he has actually held office for at least twelve months. If the intent of the legislature was to limit the grounds of recall to misfeasance, malfeasance or nonfeasance in office, there would certainly be no reason for allowing a one-year waiting period. If, however, the legislature meant the statute to be interpreted that an elected municipal official holds office at the pleasure of his constituents, then the one year provision is a period of time in which the public official is beyond the scope of the recall provisions.

■ ■ We conclude that the electors of a municipality have the right to vote for the recall of their officials

whenever 45% of their number submit a petition setting forth reasons for this recall, and that these reasons need not be acts constituting misfeasance, malfeasance or nonfeasance in office. There is no basis for interpreting the statute to require grounds of misconduct sufficient for a court when the only apparent reason for a recall is to furnish information to the people of the community upon which a political issue, rather than an issue at law, is raised. The lower court correctly ruled that this is a matter for the electorate and not the courts.

The second objection to the petitions is that the petitions do not contain a sufficient number of signatures as required by law, because of irregularities concerning some of the signatures. It was stipulated that the number of signatures required on each of the petitions was 1,458. The five petitions contained 1,710, 1,723, 1,708, 1,679 and 1,744 signatures. It was further stipulated that evidence introduced and rulings made upon the petition seeking removal of the mayor (1,710 signatures) would be binding as to the other petitions.

Each petition contains over one hundred sheets and each sheet is verified by an affidavit made by the circulator. The objectors called two witnesses who had circulated some of the pages in the petition and had signed the affidavit on each page. Maurice Stafford was a circulator and obtained signatures on twelve different sheets which totaled 194 signatures, while Barbara Keen circulated four sheets which contained 53 signatures. Each of these circulators signed the affidavit at the bottom of each sheet which stated that the signatures were genuine. Ten of the sheets circulated by Stafford and the four circulated by Keen were examined by the court. The court ruled that 23 of the 247 signatures obtained by these two witnesses were improper and therefore stricken. A majority of these 23 signatures were stricken upon the court's finding that if any two were in the same handwriting, one must be stricken.

69

Others were stricken upon the testimony of the two circulators that wives had signed their husband's names.

The objectors contend that since the statute provides that the petition verified by an affidavit is prima facie evidence that the signatures are genuine and true, that the rebuttal of this presumption would shift the burden of proof to the party submitting the petition. Since there was no proof of the validity of the signatures, the objectors contend that all the signatures obtained by the two circulators, instead of the twenty-three, should be stricken because of the alleged fraudulent affidavits attached thereto.

■ ■ In support of this position the objectors cite various authorities which state that the circulator must make an affidavit that each signature is genuine, and if the affidavit is shown to be false, the petition loses its prima facie presumption of genuineness. See, e. g., Sturdy v. Hall, 201 Ark 38, 143 SW2d 547; State ex rel. McNary v. Olcott, 62 Ore 277, 125 P 303. Thus the burden would be upon the petitioners to prove the validity of each signature obtained by the two circulators. However, in view of the factual situation of this case, we need not consider this contention.

The pages circulated by these two contain 247 signatures. Even if we were to hold all of these signatures to be invalid, there still remain a sufficient number of uncontested names on four of the five petitions. The petition for the removal of Commissioner Bunting initially contained 1,679 signatures. The striking of 247 signatures from this petition would reduce the number of signatures to 1,432, twenty-six short of the required 1,458.

■ ■ However, evidence was not introduced as to irregularities on all the pages circulated by Stafford and Keen. Two sheets (numbers 29 and 43 of the Bower petition, numbers 12 and 26 of the Bunting petition) were not

called into question. These two sheets contain a total of thirty-eight signatures. In the absence of any evidence that there was any falsity attached to the affidavits on these sheets, we cannot question the prima facie presumption created by the affidavits on these sheets. Therefore, these thirty-eight names must be added to the 1,432 which were likewise unquestioned, leaving a sufficient number of signatures on the petition relating to Bunting. The decree of the Circuit Court is accordingly affirmed.

Decree affirmed.

EBERSPACHER and GOLDENHERSH, JJ., concur.