Argued June 4, affirmed September 5, 1975

LINDSTROM ET AL, *Appellant, v.*
MYERS, *Respondent,*
SAVE OREGON'S RAINBOW TROUT, INC.,
*Intervenor-Respondent.*
539 P2d 1049

*Dale Pierson,* Salem, and *Lloyd Weisensee,* Portland, argued the cause for appellant. With them on the brief were Peter C. McCord and John R. Dudrey, Portland.

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for respondent Myers. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*Don S. Willner,* Portland, argued the cause for intervenor-respondent. With him on the brief was Willner, Bennett, Riggs & Skarstad, Portland.

PER CURIAM.

This is a proceeding by a commercial fisherman against the Secretary of State which, as originally filed, sought to enjoin the Secretary of State from accepting initiative petitions seeking to put on the ballot a measure preventing the purchase or sale of steelhead, an anadromous fish. Subsequently, when initiative petitions were filed, supplemental complaints alleging irregularities in the circulation of the petitions and failure of the sponsors to file a proper financial report were filed requesting that the Secretary of State be enjoined from certifying the measure to the ballot.

Thereafter, Save Oregon's Rainbow Trout, Inc., a non-profit corporation, which was organized for the purpose of seeking the enactment of the initiative measure in question, requested and was granted permission to intervene for the purpose of resisting the complaints. The same measure had been the subject of a ballot title contest. *Salmon For All, Inc. v. Myers,* 268 Or 311, 520 P2d 436 (1974). Plaintiff appeals from an order of the trial court dismissing his complaint.

Subsequent to the decision in the trial court the measure was approved by a vote of the people by a large majority.

■ Plaintiff first contends that it was improper to include the "legislative" title as part of the "full and correct copy"[①] of a measure to be circulated by initiative petition. The legislative title was: "Relating to rainbow trout; creating new provisions; and repealing ORS 509.030." Plaintiff argues that such improper inclusion in this instance was misleading to the signers of the petition (because of the distinction between "trout" and "steelhead") and therefore requires the rejection of signatures gathered under such a title. Were we to decide, which we do not, that plaintiff is correct in his assumption that the legislative title is not properly included in an initiative petition, we would not grant the relief requested. In the previous litigation over this matter, the "ballot" title was rewritten by the court, as follows:

BALLOT TITLE
PROHIBITS PURCHASE OR SALE
OF STEELHEAD

"Declares it to be the policy of the state to manage steelhead and other rainbow trout for recreational angling and to protect wild native stocks. Recognizes that steelhead intermingle with food fish and directs regulation to minimize incidental catch of steelhead by commercial gear. Prohibits purchase or sale of such incidental catch and di-

---

[①] Oregon Constitution, Art IV, § 1(2)(d):

"An initiative petition shall include the *full text* of the proposed law or amendment to the Constitution. A proposed law or amendment to the Constitution shall embrace one subject only and matters properly connected therewith." (Emphasis ours.)

ORS 254.030(1):

"* * * To every sheet of petitioners' signatures shall be attached a *full and correct copy* of the measure proposed by initiative petition; * * *." (Emphasis ours.)

rects delivery to state for distribution to public institutions or charitable organizations. Indian treaty fishing rights not affected. Repeals ORS 509.030."

This ballot title was prominently displayed upon the petitions preceding the legislative title and the balance of the proposed initiative measure. The chance of serious confusion in a signer's mind concerning the subject of the measure was, in our opinion, so remote that we find no grounds for objection under the principle set forth in *State ex rel Carson v. Kozer,* 108 Or 550, 555-56, 217 P 827 (1923):

> "* * * [T]here is strongly suggested, in the language of the Constitution and this law, a required liberal construction, to the end that this constitutional right of the people may be facilitated, and not hampered, by either technical statutory provisions or technical construction thereof, further than is necessary to fairly guard against fraud and mistake in the exercise by the people of this Constitutional right."

As stated in *Anthony et al v. Veatch et al,* 189 Or 462, 501, 220 P2d 493, 221 P2d 575 (1950):

> "* * * [I]n considering whether the title of an act is broad enough to express the subject of the act, the court must take into consideration the ballot title furnished by the attorney general. Such ballot title is a part of the title of the act, and defects and omissions in the legislative title may be remedied thereby. * * *."

■ Plaintiff next contends that the initiative petition "cover" sheet (upon which appears all information concerning the measure and its sponsors) can include the names of only three chief petitioners of the measure. In 1969 the Oregon legislature amended ORS 254.030[2] by adding to subsection (1) the sentence, "Every petition shall designate not to exceed three

[2] Oregon Laws 1969, ch 42, § 1.

persons as chief petitioners, setting forth their names and mailing addresses." The cover sheet contained the names of the three chief petitioners, as specified by the statute, the name of the Governor, who was listed as a "Principal Sponsor," and the names of 42 additional persons.

In *Kiernan v. Portland,* 57 Or 454, 461, 111 P 379, 112 P 402, 37 LRA (ns) 332 (1910), this court disposed of a similar contention, saying:

> "* * * It may be conceded that these words should have been printed upon the ballot, and that the ordinance requiring this to be done is in a sense mandatory upon the officers charged with the duty of preparing the ballot; but it does not follow that a failure in this respect renders the election void. The omission could have misled nobody, as the important question for the voter to decide was not who introduced the measure, but what its real merits were * * *."

And, in *State ex rel Carson v. Koser, supra,* it was reiterated that matters not affecting the merits of the proposal are not necessarily grounds for invalidation:

> "It was urged at the hearing that the printing of the names of the sponsors of the referendum is not mandatory. With this contention the writer agrees, because the people are to vote on the measure, and not on the organizations. The names of the promoters on the ballot relate to form." 108 Or at 562.

The above cases refer to measures as they appeared upon the ballot rather than upon the petition. The rationale, however, is the same. The important thing is the extent to which the defect might influence the voters' consideration of the merits. In the present case we do not believe extra names should invalidate the petition because such names would not tend to be misleading. We do not imply that those promoting a meas-

ure and the Secretary of State should not diligently follow the directions of ORS 254.030, but we are not disposed to invalidate the signers' signatures or to disfranchise the voters because of failure to follow a "directory" statute.

■ Plaintiff also contends that the petitions, as circulated, often had more than one signature sheet attached to a cover sheet and therefore the petitions and the signatures thereon failed to comply with the law and should be invalidated. ORS 254.030 provides in part:

"(1) * * * To every sheet of petitioners' signatures shall be attached a full and correct copy of the measure proposed by initiative petition; * * *."

In some manner not discernible to us plaintiff reaches a conclusion that this language limits one signature sheet to each cover page. We cannot accept plaintiff's interpretation. If ten signature sheets are attached to one cover sheet, "a full and correct copy of the measure" is attached "to every sheet of petitioners' signatures." Plaintiff finds significance in the substitution of the statute's present language for that which preceded it, which was:

"Every such sheet for petitioners' signatures shall be attached to a full and correct copy of the title and text of the measure so proposed by the initiative petition."

However, we see no substantive change and the literal language of the statute cannot be twisted to require the result which plaintiff advocates.

■ Plaintiff also contends that the petition must be invalidated because intervenors separated cover sheets from completed signature sheets, sorted the signature sheets by counties and then reapplied cover sheets to the sorted signature sheets before delivering the petitions to the Secretary of State. In addition, interven-

ors accepted from circulators signature sheets which were unattached to cover sheets.

On June 13 or 14, intervenor ceased reassembling signature sheets by county. By that date 28,066 signatures had been received. The evidence shows that a total of 88,806 signatures was submitted. After verification as required by statute, 77,211 were deemed valid. Assuming that all 28,066 signatures affected by the reassembling procedure were those of properly registered voters within the validated total of 77,211 (an unwarranted assumption but one most favorable to plaintiff), there would remain a total of 49,145 valid signatures. The evidence also shows that after June 13 or 14, 7,366 signatures were turned in to intervenors by circulators on signature sheets which had no cover sheet attached. After these signatures are deducted, 41,779 valid signatures would remain. Only 39,984 valid signatures were required to place the measure on the ballot. Assuming that all signatures which fell within the two previously discussed categories were deleted, there would still be enough validated signatures to authorize putting the measure on the ballot. Consequently, we need not decide whether the signatures should be counted to which plaintiff objects.

■ Because a portion of the signatures was invalid, plaintiff contends he has shown that the statistical method for verification provided by statute and used by the Secretary of State was not appropriate. The testimony shows that the Secretary of State used the random sampling technique authorized by ORS 254.-042(2) to determine the number of valid signatures and by this means established that 87 per cent of the 88,806 signatures was valid. The extent and manner of the sampling were shown to be governed by the size of the pool of signatures, which, if changed, required the sampling to be "done over" whereby the percentage of signature validity might not be the same.

Plaintiff argues that because some of the signatures were obviously disqualified due to the manner in which they were secured and handled, the size of the pool was changed, this change made the validation process inapposite, and it is impossible to determine the number of valid signatures. The evidence and this opinion demonstrate there was a pool of at least 53,374 signatures (88,806 minus 28,066 and 7,366) subject to validation. Plaintiff has the burden of proving that there was an inadequate number of valid signatures. At best he has shown that a different sized pool should have been sampled; he has not shown that there would be insufficient valid signatures had such a pool been sampled.

■ Plaintiff next contends the statement of contributions and expenditures was improper for various reasons and defendant therefore should not have placed the measure upon the ballot. ORS 254.600 provides:

"Sponsor of initiative or referendum petition to file statement of receipts and expenditures; effect of failure to file. (1) The sponsors of any initiative or referendum petition, at the time of filing their completed petition, shall file with it a statement showing the contributions and expenditures for the petition. This shall be verified by the sponsor or sponsors filing the petition, giving the name and postoffice address of every contributor to the expense of the petition and the amount paid by each. The statement shall also contain the name and postoffice address of every person to whom, and for what service, any money was paid or promised on account of the petition or which is owed and to be paid.

"(2) If such verified statement is not filed, as required by this section, the Secretary of State shall not place the measure petitioned for on the official ballot.

"* * * * * *"

Plaintiff first argues that the statement was defective because it was not verified by the sponsors filing the petition. The sponsors of the petition are shown on its face as Save Oregon's Rainbow Trout, Inc., and Governor Tom McCall, "Principal Sponsor." We believe the statute calls for verification by all sponsors if there are more than one, and Governor McCall did not verify the expenditures. However, the following language from *Miles et al v. Veatch et al,* 189 Or 506, 529-30, 220 P2d 511, 221 P2d 905 (1950), a situation in which the financial statement by the sponsors was not sufficiently detailed, seems appropriate:

"We are told that the act is void for the reason that its sponsors failed to file with the initiative petition a statement of moneys received and expended in the circulation thereof. Sec. 81-2412, O. C. L. A. It is argued that, because of such failure, the secretary of state was without power to place the measure upon the official ballot. There is attached to the amended complaint, as an exhibit, a statement of contributions and expenditures actually filed on behalf of the sponsors. It is contended that a reading of such statement will readily demonstrate that it was useless for any practical purpose. For example, it recited that there was paid to Chas. F. Henne, for 'personal services', $2,100.00, and for 'traveling and miscellaneous expenses', $2,012.36; and to Henry Niemela, for 'traveling and miscellaneous expenses', $1,231.56. These items of expenditure are not sufficiently detailed to meet the requirements of law.

"The question is, how much weight is to be given to a complaint of this sort, when it is put forward subsequent to the election? Cf. *State ex rel. McPherson v. Snell,* 168 Or. 153, 121 P. 2d 930. The failure of the sponsors to file a sufficient statement of expenditures did not prevent the electors from giving a full, fair, and honest expression of the popular will at the election. The initiative petition

was approved by a vote of 273,140 to 184,834. No doubt it would have been proper for the secretary of state, because of the failure of the sponsors of the measure to file a proper statement of their expenditures, to have refused to place the initiative petition upon the ballot. But this court should not in effect disfranchise 273,140 voters because of the failure of an officer to comply with technical requirements of the law, when it is not claimed that such failure had any effect upon the result of the election * * *."

In contrast with *Miles* the challenge here was commenced prior to the election, which is an important consideration. However, invalidation of an election is a severe sanction and should not be lightly undertaken. It is a matter of balancing the seriousness of the defect against the consequences of invalidation. Before the electorate will be disfranchised by anyone's failure to comply with the statute, the failure must be one of considerable magnitude which threatens the purity of the ballot. We do not so view this failure.

■ Plaintiff further contends that the statement of finances did not comply with the requirements of the law because it lumped miscellaneous contributions of less than $25 in one item without giving the name, address, and amount given for each contributor, which is required by the statute. Contributions of more than $25 were listed individually. This is another technical violation of the statute and it is this court's impression that such influence as can be exerted for less than $25 is not a threat to the purity of the initiative process.

■ Plaintiff also contends the statute was violated because the statement lists "in kind" contributions totaling $1,260 without listing the names of the contributors, their addresses, or the value of each contribution. We assume an "in kind" contribution is a service or material loaned or given for the purpose of promoting

the measure. Plaintiff, apparently, did not closely scrutinize the report filed with the Secretary of State. It shows that the $1,260 total comprises an item of $260 for rental value at $65 per month of eleven pieces of office furniture donated by Smith Brothers, 135 N. W. Park Avenue, Portland, Oregon, and an item of $1,000 for brochures donated by Warren H. Deal, 2377 Hillside Lane, Lake Oswego, Oregon. Plaintiff's contention is without substance.

The judgment of the trial court is affirmed.