Argued September 11, affirmed September 29, reconsideration denied
October 11, petition for review denied by opinion October 19, 1978

BARNES et al, *Appellants,*
*v.*
PAULUS et al, *Respondents.*
(No. 107216, CA 11918)

588 P2d 1120

Robert D. Durham, Eugene, argued the cause for appellants. With him on the brief was Kulongoski, Heid, Durham & Drummonds, Eugene.

James A. Redden, Attorney General, Salem, argued the cause for respondent Norma Paulus, Secretary of State of the State of Oregon, and respondent James A. Redden, Attorney General of the State of Oregon. With him on the brief were James W. Durham, Sr. Chief Counsel, Trial, Walter L. Barrie, Solicitor General, and Al J. Laue, Assistant Attorney General, Salem.

Charles D. Burt, Salem, waived appearance for respondent Jim Whittenburg.

Before Schwab, Chief Judge, and Johnson, Gillette and Roberts, Judges.

SCHWAB, C. J.

**SCHWAB, C. J.**

The principal issues presented by this appeal are whether an initiative measure proposing an amendment to the Oregon Constitution is in fact a revision and whether the initiating petition for this measure is legally sufficient to place the measure on the November 7, 1978 statewide ballot.

On January 20, 1978, defendant Jim D. Whittenburg filed a preliminary petition with the Secretary of State's office.[1] This initiative petition, designed to limit property taxes, began with the following words:

"The Amendment.

"That this Article is added to the Constitution to read:

"Section 1.

"* * * * *."

On February 7, 1978, the Attorney General prepared a ballot title for the measure, the beginning of which stated:

"LIMITATIONS ON AD VALOREM
PROPERTY TAXES.

"Proposed constitutional amendment limits ad valorem real property taxes * * *."[2]

In his letter transmitting the ballot title to Raymond Phelps, Assistant to the Secretary of State for Elections and Public Records, the Attorney General advised that there were several inconsistencies within the proposed initiative measure, that the petition should be amended to correct these inconsistencies, and that the changes could be made without altering the ballot title.[3]

On February 8, 1978, Phelps forwarded the ballot title to Whittenburg, along with a letter informing

---

[1] *See* ORS 254.030.

[2] *See* ORS 254.060.

[3] *See* ORS 254.060.

him that he could begin to print cover[4] and signature sheets for the petition but that those documents were to be submitted to and approved by the Secretary of State's office prior to circulation for signatures.[5] On February 22, 1978, Whittenburg filed a printed version of the initiative petition in the form of a cover sheet. At that time, Whittenburg left instructions with another representative of the Secretary of State's office, Sonya Lindly, that she was to communicate any required changes directly to his printer. On February 27, 1978, Lindly telephoned Whittenburg's printer and explained in detail the changes that were necessary.

On March 21, 1978, Whittenburg submitted another cover sheet in the hopes of obtaining approval of the petition for circulation. He reiterated his request that Lindly notify his printer of any further corrections to be made. In her review of the cover sheet, Lindly found that the printer had corrected only one of the five typographical errors pointed out earlier and again telephoned the printer to apprise her of that fact. What Lindly failed to notice, however, was that the phrase "That this Article is added to the Constitution to read:" had been inadvertently omitted. On March 29, 1978, Whittenburg filed another version of the petition cover sheet, which, after comparison with

---

[4]The cover sheet in an initiative petition is the document containing the ballot title and the proposed changes in law, (statutory or constitutional as the case may be) as well as instructions on how to enter signatures on the sheets that follow.

[5]OAR 165-20-005 incorporates by reference the administrative rules promulgated by the Secretary of State in a publication entitled "Initiative and Referendum Manual" (1977-78). The Manual states in pertinent part at page 3:

"A copy of the cover and signature sheet must be submitted to the Secretary of State prior to circulation. The format will be reviewed and the text proofread. The text of the measure must be printed *exactly* as it was submitted when the preliminary petition was filed. When the sheets are determined to be correct, the petitioners will be authorized to circulate for signatures. * * *" (Emphasis in original.)

According to plaintiffs' counsel at oral argument, the purpose of the review by the Secretary of State is to correct typographical errors and to assure that a petition is proper as to form, kind, and size of paper. *See* ORS 254.030(1).

the March 21 version, was approved for circulation despite the fact that the phrase in question was missing from this sheet as well.

On June 30, 1978, Whittenburg presented to the Secretary of State signature sheets in support of the petition. None of the signatures counted as sufficient to place the measure on the ballot was gathered under a cover sheet containing the phrase "That this Article is added to the Constitution to read:".

Plaintiffs, two registered voters, brought this action for declaratory and injunctive relief on behalf of themselves and all others similarly situated. They sought to enjoin defendant Paulus, in her official capacity as Secretary of State, from: (1) verifying and certifying that a sufficient number of signatures of qualified voters had been received by her office to place the initiative on the ballot as a proposed constitutional amendment; and (2) including the ballot title for the initiative on the official statewide ballot. The ballot title is all that appears on the election ballot. *See* ORS 254.070, 254.090. Thus, plaintiffs were actually attempting to prevent the initiative measure from appearing on the ballot. The trial court granted summary judgment denying injunctive relief, thereby ruling that the measure could be placed on the ballot for the November, 1978, general election.

Plaintiffs argue that the omission of the phrase "That this Article is added to the Constitution to read:" after issuance of the ballot title renders invalid the initiative petition.[6] They contend that under the circumstances present here, permitting the initiative

---

[6]In their brief, plaintiffs allege that there were irregularities in the circulation of the petition that warrant its nullification. This contention was based on the fact that the vast majority of the signature sheets filed with the Secretary of State on June 30 were attached to a copy of the nonapproved cover sheet submitted on March 21. The remaining sheets accompanied the March 29 cover sheet which did receive approval for circulation. The signature sheets were segregated according to the respective cover sheet to which they were attached, and, since the signatures

measure to be placed on the ballot would violate the full-text requirement found in Art IV, § 1(2)(d) of the Oregon Constitution, the full-and-correct copy rule contained in ORS 254.030(1), and OAR 165-20-005.[7]

At the outset, it should be recalled that the role of the judiciary in controlling the actions of the Secretary of State is limited. Courts are without power to inquire into the constitutional validity or the legality of the subject matter of an initiative measure prior to its enactment. *Oregon AFL-CIO v. Weldon,* 256 Or 307, 312, 473 P2d 664 (1970); *Johnson v. City of Astoria et al,* 227 Or 585, 591-93, 363 P2d 571 (1961); *Unlimited Progress v. Portland,* 213 Or 193, 195, 324 P2d 239 (1958); *State ex rel. Stadter v. Newbry et al.,* 189 Or 691, 697-98, 222 P2d 737 (1950); *State ex rel. Carson v. Kozer,* 126 Or 641, 649, 270 P 513 (1928) [hereinafter *Carson II*]. The only pre-enactment authority possessed by the courts is to review the legal sufficiency of an initiating petition. *Unlimited Progress,* 213 Or at 195, *Carson II,* 126 Or at 644-45. The words "legally sufficient" refer only to compliance with the prescribed procedures for getting an initiative measure on the ballot. *Newbry,* 189 Or at 697, *Carson II,* 126 Or at 646.

accompanying the March 29 version numbered approximately 3,000, only those signatures appended to the March 21 sheet were counted. Plaintiffs' brief thus reasons that the signatures counted for the purpose of qualifying the measure for placement on the ballot were invalid and that no count of valid signatures has ever been made. However, plaintiffs' counsel agreed at oral argument that the omitted language, "That this Article is added to the Constitution to read," provided the sole basis for appeal on procedural grounds.

[7] Or Const. Art IV, § 1(2)(d):

"An initiative petition shall include the *full text* of the proposed law or amendment to the Constitution. A proposed law or amendment to the Constitution shall embrace one subject only and matters properly connected therewith." (Emphasis ours.)

ORS 254.030(1):

"* * * To every sheet of petitioners' signatures shall be attached a *full and correct copy* of the measure proposed by initiative petition * * *." (Emphasis ours.)

For the pertinent language of OAR 165-20-005, *see* n 5, *supra.*

■ Constitutional and statutory election provisions are to be liberally construed in order to effectuate their purpose. *State ex rel. McPherson v. Snell,* 168 Or 153, 162, 121 P2d 930 (1942); *State ex rel. Carson v. Kozer,* 108 Or 550, 555-56, 217 P 827 (1923) [hereinafter *Carson I*].

■ In the only decision interpreting the full-text requirement of Art IV, § 1(2)(d), *Schnell v. Appling,* 238 Or 202, 395 P2d 113 (1964), the court ruled that an initiative petition proposing a statutory change is not defective because it does not recite the text of statutes it would repeal nor the text of those laws mentioned in, but left unchanged by, the proposed measure. *Schnell,* 238 Or at 204. It held that since such matter was not part of the proposed law, it was unnecessary to include it in the initiative petition. *Schnell* 238 Or at 204-05. The introductory language omitted here is not part of the proposed amendment, and it follows that its omission did not violate the full-text requirement.

Plaintiffs next contend that the full-and-correct-copy rule embodied in ORS 254.030(1), when considered along with the administrative rules governing the circulation of initiative petitions, mandates that the "text of the measure * * * be printed exactly as it was submitted when the preliminary petition was filed."[8] Plaintiffs' contention ignores the Supreme Court's repeated refusal to invalidate an otherwise proper measure because of technical noncompliance with statutory requirements. *See Lindstrom v. Myers,* 273 Or 46, 56, 539 P2d 1049 (1975); *Miles et al. v. Veatch, et al,* 189 Or 506, 532, 220 P2d 511, 221 P2d 905 (1950); *State ex rel. McPherson v. Snell, supra,* 168 Or at 162 (substantial compliance with statute facilitating exercise of initiative power is all that is required); *State ex rel. McNary v. Olcott,* 62 Or 277, 279, 125 P 303 (1912) ("legal sufficiency" means complying substantially, not necessary technically, with the requirements of the law); *Jewett v. Yerkovich,*

[8] *See* nn 5 and 7, *supra.*

27 Or App 127, 133, 555 P2d 950 (1976). Moreover, in *Lindstrom v. Myers, supra,* the Supreme Court stated that failure to follow ORS 254.030, a "directory statute," does not by itself constitute a fatal defect to an initiative petition cover sheet. *Lindstrom,* 273 Or at 51-52. "The important thing is the extent to which the defect might influence the voters' consideration of the merits." *Lindstrom v. Myers, supra* at 51.

> "* * * [I]nvalidation of an election is a severe sanction and should not be lightly undertaken. It is a matter of balancing the seriousness of the defect against the consequences of invalidation. Before the electorate will be disfranchised by anyone's failure to comply with the statute, the failure must be one of considerable magnitude which threatens the purity of the ballot. * * *" *Lindstrom v. Myers,* 273 Or at 56.

In determining the magnitude of the failure, we must consider the likelihood that the error misled the signers of the petition. *Lindstrom,* 273 Or at 50, 51.

Plaintiffs argue that the absence of the phrase "That this Article is added to the Constitution to read:" may have led the signers of the petition to believe that the measure proposed a mere statutory change, not a constitutional amendment. However, the petition cover sheet challenged herein contains a ballot title whose text begins: "Proposed constitutional amendment * * *." The caption of the initiative measure which appears immediately beneath the ballot title reads: "Proposed Amendment." It hardly seems reasonable to assume that the absence of the language adverted to by plaintiffs was likely to have produced "serious confusion in a signer's mind" concerning the impact of the proposed measure. *See Lindstrom,* 273 Or at 50.

Alternatively, plaintiffs contend that the signers of the petition were misled or deceived because nothing in the initiative measure, standing alone, suggests that which the ballot title purports to describe: a proposed constitutional amendment. However, in

*Lindstrom,* the Supreme Court dismissed as remote the possibility that reference to "steelhead" in the ballot title and to "trout" in the body of the initiative caused signers of the petition examined therein to misunderstand the subject matter of the measure. *Lindstrom v. Myers, supra* at 50. In the instant case, where no inconsistencies are apparent, there is an even slighter chance of voter mistake or deception. Under the principles enunciated in *Lindstrom,* and *Carson I,* the petition here challenged is legally sufficient to be placed on the ballot.

■ Plaintiffs also contend that the measure proposing property tax limitations is not an amendment, but instead provides for a constitutional revision. In *Holmes v. Appling,* 237 Or 546, 392 P2d 636 (1964), the Supreme Court held that the Constitution, by its terms, precludes the use of the initiative process to achieve a constitutional revision. *Holmes,* 237 Or at 551. In *Holmes,* the court approved the refusal by the Secretary of State to furnish a ballot title after concluding that the measure contested therein could not possibly be characterized as an amendment. *Holmes v. Appling, supra* 237 Or at 552-55. A comparison of the measure in *Holmes* with that of the case at bar demonstrates their dissimilarity. The property tax limitation measure before us here consists of six sections totalling approximately 16 lines of type which occupy less than one-third of the petition cover sheet. The caption reads: "Proposed Amendment." In contrast, the document in *Holmes* appeared to be based largely on a draft of a constitutional revision that had not been adopted by the Legislative Assembly one year earlier. The court noted several indicia suggesting something other than an amendment:

"* * * [T]he measure * * * is * * * a thorough overhauling of the present constitution, commencing with the customary 'The people of Oregon ordain this Constitution,' and including an article providing for the transition period between the date of its adoption and the day it was to go into effect. It is 56 typewritten pages

in length. It contains many and important changes in substance, many others in language, removing ambiguities and correcting errors, and still others in the arrangement of its various provisions." *Holmes v. Appling,* 237 Or at 552.

Despite the differences between the two measures, plaintiffs advance the proposition that the most important distinction between an amendment and a revision is the number of existing constitutional provisions that would be affected if the measure were to become law. However, it is only reasonable to expect that an amendment limiting property taxation will have a ripple effect, and we are unpersuaded by plaintiffs' citation of *Holmes* as supporting authority for the test they propose. It is impossible to draw a precise line between an amendment and a revision. Suffice it to say that the initiative measure proposed here is more in the nature of an amendment than a revision. As such, it may properly be submitted to the people for their approval or rejection.

■ Plaintiffs' last assertion is that even if the proposed initiative is an amendment, it is constitutionally objectionable in that it embraces more than one subject. *See* Or Const, Art IV, § 1(2)(d). Any decision on the merits of this contention must be deferred until the measure is enacted into law, if it is. *State ex rel. Stadter v. Newbry, supra,* 189 Or At 697-98; *Brummell v. Clark, et al,* 31 Or App 405, 413, 570 P2d 671 (1977).

The judgment of the trial court is affirmed.

**JOHNSON, J.,** specially concurring.

The preliminary petition filed with the Secretary of State's office provided:
                    "THE AMENDMENT
"Be it enacted by the people of Oregon
" *That this Article is added to the Constitution to read:*
        "Section 1.
        "[a] The maximum amount of any ad valorem tax on real property shall not exceed One and one-half percent

[ 336 ]

[1½%] of the full cash value of such property. The one and one-half percent [1½%] tax to be collected by the counties and apportioned according to law to the districts within the counties.

"[b] The information provided for in subdivision [a] shall not apply to ad valorem taxes or special assessments to pay the interest and redemption charges on any indebtedness approved by the voters prior to the time this section becomes effective.

"Section 2.

"[a] The full cash value means the County Assessors valuation of real property as shown on the 1975-76 tax bill under 'full cash value', or thereafter the appraised value of real property when purchased, newly constructed, or a change in ownership has occurred after the 1975 assessment. All real property not already assessed up to 1975-76 tax levels may be reassessed to reflect that valuation.

"[b] The Fair market value base may reflect from year to year the inflationary rate not to exceed two percent [2%] for any given year or reduction as shown in the consumer price index or comparable data for the area under taxing jurisdiction.

"Section 3.

"From and after the effective date of this article, any changes in State taxes enacted for the purpose of increasing revenues collected pursuant thereto whether by increases or changes in methods of computation must be imposed by an Act passed by not less than two-thirds of all members elected to each of the two houses of the Legislature except that no new ad valorem taxes on real property, or sales or transaction taxes on the sales of real property may be imposed.

"Section 4.

"Cities, Counties and special districts, by a two-thirds vote of the qualified electors of such district, may impose special taxes on such district, except ad valorem taxes on real property or a transaction tax or sales tax on the sale of real property within such City, County or special district.

"Section 5.

"This article shall take effect for the tax year beginning on July 1 following the passage of this Amendment, except Section 3 which shall become effective upon the passage of this article.

"Section 6.

"If any section, part, clause, or phrase hereof is for any reason held to be invalid or unconstitutional, the remaining sections shall not be affected but will remain in full force and effect."

The italicized language was omitted from the version circulated for signatures. My disagreement with the majority concerns two points:

1. The majority first concludes that the italicized language is merely "introductory" and was an unnecessary part of the initiative petition, relying on *Schnell v. Appling,* 238 Or 202, 395 P2d 113 (1964). The issue in that case was whether an initiative petition was deficient because the text made reference by section number to related and repealed statutes and did not quote the full text of the referenced statutes. The court held that the full text of the referenced statutes was mere surplusage, and was not required by Article IV, § 1(2)(d) of the Oregon Constitution. The deleted language here is not surplusage, but essential to understanding that the purpose of the measure is to amend the constitution. The preliminary petition expressly stated that "this Article is added to the Constitution * * *." Reading the petition as circulated, particularly the words "Be it Enacted . . ." and Section 6, the severability clause, suggests that this initiative is intended to be statutory. We are thus confronted with an error in procedure by the sponsors of this measure which could have significant substantive impact.

2. I cannot agree with the majority that the error here may not be misleading. The majority assumes that because the ballot title prepared by the Attorney General states that the measure is a constitutional

amendment, the signers of the petition believed they were signing a measure proposing a constitutional amendment. This may be true, but the fact is that the signers signed a measure which *may* not be a constitutional amendment. I am certainly not prepared in this case to hold as a matter of law that an Attorney General's ballot title which was written with respect to an initiative petition that was different from the petition circulated provides the latter with a meaning it does not have.

The principal issue confronting us is unlike that presented in most of the cases discussed in the majority opinion, *i.e., Lindstrom v. Myers,* 273 Or 46, 539 P2d 1049 (1975); *Miles et al. v. Veatch, et al,* 189 Or 506, 220 P2d 511, 211 P2d 905 (1950); *State ex rel. McNary v. Olcott,* 62 Or 277, 125 P 303 (1919); *Jewett v. Yerkovich,* 27 Or App 127, 555 P2d 950 (1976). These cases stand for the proposition that statutes prescribing procedures for the initiative process must be construed liberally to carry out the purpose of the initiative and referendum embodied in Article IV of the Oregon Constitution. The principal issue here is not statutory, but whether the petition as circulated violated Article IV, § 1(2)(d), which provides:

> "(d) An initiative petition shall include the full text of the proposed law or amendment to the Constitution. * * *"

The majority also suggests that substantial compliance with this constitutional provision is all that is required, relying on *State ex rel. McPherson v. Snell,* 168 Or 153, 121 P2d 930 (1942) and *Carson v. Kozer,* 108 Or 550, 217 P 827 (1923). These cases, like *Lindstrom* etc., involve the application of statutory requirements. The dictum relied on by the majority at best requires that Article IV, § 1(2)(d) be construed to carry out its purpose.

The majority apparently perceives that the only purpose of the constitutional full text requirement is to inform petition signers adequately of the contents of

the proposed measure, and, therefore, any error in preparing petitions can be ignored if the Attorney General's ballot title corrects the defect. I perceive that Article IV, § 1(2)(d) may have another salutary purpose which is to ensure certainty in the electoral process and avoid *any possibility* of manipulation, by requiring that the measure circulated for signatures be exactly the same as that proposed and filed by the sponsors. The fact that petitioner concedes that the evidence here indicates an inadvertent error does not promote certainty nor does it avoid the *possibility* with which Article IV, § 1(2)(d) appears to be concerned.

The majority is correct that the only case interpreting Article IV, § 1(2)(d) is *Schnell v. Appling, supra.* For the reasons I have already stated, that case does not assist in deciding the issues presented here and certainly does not justify the majority's conclusion that the deleted language was unnecessary. This is not to say that on a more thorough analysis the majority ultimately may be correct. My point is that we should not decide that question here.

The majority and I agree that this is an inappropriate case for the exercise of equitable jurisdiction intervening in the initiative process. The majority opinion is in great part based upon an attempt to reconcile dicta contained in several election law cases. The majority reasons therefrom the courts will not inquire into the constitutional validity or the legality of the subject matter of an initiative measure prior to enactment, but will intervene for procedural irregularities which may mislead the electorate. I find it easier to reconcile the holdings in those cases. The fact is that courts have rarely enjoined the placing of an initiative measure on the ballot. The most notable recent exception was *Holmes v. Appling,* 237 Or 546, 392 P2d 636 (1964), wherein the proponents were prevented by the court from placing a constitutional revision on the ballot. The defect in that measure was not procedural, but directly concerned the subject matter.

The reason courts are reluctant to equitably intervene in the initiative process is obvious. The separation of powers doctrine dictates that the judiciary not intervene in legislative proceedings. For the same reason we are reluctant to intervene in the initiative process. Also, courts should not render advisory opinions concerning legislation that may never be enacted. Applying these principles, I would conclude that there are only two circumstances that would justify the exercise of equitable jurisdiction. First, courts should intervene if the actions of election officials would illegally prevent a valid initiative petition from reaching the ballot. Second, courts should intervene if it can be said without question that the initiative petition is void on its face either because of procedural or substantive defect. This was the case in *Holmes v. Appling.* To permit the measure at issue there on the ballot would have caused irreparable harm. The voters would have been required to engage in a fruitless exercise. Proponents and opponents would have expended resources on a cause that did not exist. Here it cannot be said without question that this measure is void. It may conceivably have a different substantive impact than contemplated, and possibly might be void. These are legal questions which have not been previously resolved with any certainty and should not be decided now.

The plaintiff and majority indicate that the test for the exercise of equitable jurisdiction is whether the procedural error may mislead or confuse the voters. I disagree. The procedural error here may lead to confusion and misunderstanding. Likewise, the substantive provisions of this initiative petition may be misleading and cause confusion. That characterization can be made for practically any piece of legislation. Because a measure is misleading should not be grounds for equitable intervention. Courts cannot and should not attempt to act as a substitute for an informed electorate.

I concur that the decision of the trial court should be affirmed.