Argued and submitted July 24, 1997, affirmed August 5, 1998, petition for review denied January 12, 1999 (328 Or 246)

Mark W. NELSON,
*Appellant,*

*v.*

Phil KEISLING,
Secretary of State,
*Respondent,*

*and*

Ellen C. LOWE,
George Waldmann and Russell E. Danielson,
*Intervenors-Respondents.*

(96C12462; CA A94305)

964 P2d 284

James M. Brown argued the cause for appellant. With him on the briefs were K. Bruce Knivila and Enfield Brown & Collins.

Robert M. Atkinson, Assistant Attorney General, argued the cause for respondent Phil Keisling. With him on the briefs were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

John DiLorenzo, Jr., argued the cause for intervenors-respondents Ellen C. Lowe, George Waldmann and Russell E. Danielson. With him on the brief were Michael E. Farnell and Hagen, Dye, Hirschy & DiLorenzo, P.C.

Before Landau, Presiding Judge, and Deits, Chief Judge,* and Riggs, Judge.**

LANDAU, P. J.

---

* Deits, C. J., *vice* Leeson, J., resigned.
** Riggs, J., *vice* Richardson, S. J.

## LANDAU, P. J.

At issue in this case is whether the courts may invalidate otherwise lawful initiative petition signatures on the ground that some of the signature gatherers were not registered voters. Plaintiff concedes that no statute authorizes the courts to do so. He argues that the courts nevertheless have the "common-law" authority to invalidate signatures when confronted with a failure to comply with "nontechnical" provisions of the state's election laws. Defendant, the Secretary of State (the Secretary), contends that the sole remedy is a statutory fine. The trial court agreed with the Secretary and entered summary judgment dismissing plaintiff's claims for declaratory and injunctive relief. We affirm.

The relevant facts are not in dispute. The supporters of Ballot Measure 44 (1996), a proposed tobacco tax, filed petition sheets with the Secretary. The petition sheets included verification statements signed by initiative petition circulators:

"I, (print circulator's name) _____, hereby verify every person who signed this sheet did so in my presence and I believe each person is a qualified voter in the State of Oregon[.]"

As permitted by statute, the Secretary verified the petition signatures by statistical sampling. ORS 250.105(4). The Secretary concluded that an adequate number of valid signatures had been collected, and he certified the measure to appear on the November 1996 ballot.

Plaintiff initiated this action, alleging that a substantial number of the signatures must be invalidated, because some of the individuals who collected them were not registered voters. According to plaintiff, the collection of signatures by individuals not registered to vote violates ORS 260.560 and OAR 165-014-0005 (1996) and constitutes fraud on the voters. Plaintiff asked for a declaration that the initiative petition signatures that had been collected by individuals who were not registered Oregon voters could not be counted as valid signatures and that the Secretary could not certify Ballot Measure 44 until he first had eliminated those signatures from the total and determined that the remaining

valid signatures are sufficient to satisfy the requirements of the law. He also asked for an injunction requiring the Secretary to identify all individuals who collected initiative petition signatures who were not registered Oregon voters and requiring the Secretary to exclude any signatures collected by those individuals in determining the sufficiency of the signatures for certification of the measure to the general election ballot.

The parties filed cross-motions for summary judgment. In his motion, plaintiff offered uncontradicted evidence that at least some individuals who had collected petition signatures for Ballot Measure 44 at the time were not registered Oregon voters. The invalidation of all signatures collected by those individuals could result in an insufficient number of valid signatures to certify the measure to the general election ballot. The Secretary argued that the court lacked authority to invalidate signatures, even if they were collected by individuals who were not registered Oregon voters. Intervenors Lowe, Waldmann and Danielson joined the Secretary in arguing that the court lacked the authority to invalidate signatures for violation of ORS 260.560. In the alternative, intervenors argued that, if the courts have authority to invalidate signatures for violation of ORS 260.560, the statute is unconstitutional. The trial court granted the petition to intervene, granted the Secretary's motion, denied plaintiff's motion and entered summary judgment dismissing the complaint.

Plaintiff appealed and requested expedited consideration of the appeal to obtain a decision before the November 1996 general election. We denied the motion. While the appeal was pending, the voters approved Measure 44 at the November 1996 election.

On appeal, plaintiff argues that the trial court erred in entering summary judgment in favor of the Secretary. In support of his argument, plaintiff relies on two contentions. He first contends that signatures collected in violation of ORS 260.560 and OAR 165-014-0005 (1996) must be invalidated. He then argues that, even if violation of the statute

and administrative rule do not require invalidation of the signatures, the collection of the signatures by nonregistered voters constituted fraud and "false verification" and, therefore, provides an independent ground for invalidating the signatures.

■ We begin with plaintiff's arguments concerning the appropriate remedy for violating ORS 260.560 and OAR 165-014-0005 (1996). According to plaintiff, there exist common-law remedies for violations of the statute and the rule, which remedies include invalidation of initiative petition signatures. Plaintiff relies on a number of decisions in which the Supreme Court in fact did invalidate initiative petition signatures, in particular, *State ex rel. v. Snell*, 155 Or 300, 60 P2d 964 (1936), and *State ex rel. v. Olcott*, 62 Or 277, 125 P 303 (1912). The Secretary does not dispute the holding of those cases. He does dispute their applicability, however. According to the Secretary, *Snell*, *Olcott* and similar cases did not create a common-law remedy, but instead applied a remedy that existed in an earlier statute that later was repealed. Plaintiff acknowledges that the cases applied a statutory remedy and that the statute creating the remedy was repealed. He insists that the courts nonetheless have continued to employ the same remedy even after the repeal of the underlying statute, that the courts in effect revived the remedy as a matter of common law and that the legislature did not reject expressly that common-law remedy when it enacted what is now ORS 260.560.

The Secretary rejoins that the courts, in fact, have not revived the remedy of invalidating signatures, but instead merely have acknowledged that courts retain the authority to conduct preenactment review for the legal sufficiency of ballot measures and that the remedies for legal insufficiency are determined by reference to current statutes. In this case, the Secretary argues, the remedy for violation of ORS 260.560 and OAR 165-014-0005 (1996) is the imposition of a fine for each violation, pursuant to ORS 260.995. Intervenors join the Secretary's arguments, but add the alternative argument that, if we conclude that the violation of ORS 260.560 requires invalidation of initiative petition signatures, the statute is a violation of constitutional guarantees of free speech.

To determine the scope of the remedies for violation of the statute and the rule, we examine the relevant statutory and regulatory language in context and, if necessary, enactment history and other interpretive aids. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). Also pertinent to the analysis are related statutory or regulatory provisions, prior versions of the statutes or regulations and cases construing the current or prior language. *State v. Webb*, 324 Or 380, 390, 927 P2d 79 (1996); *State v. Guzek*, 322 Or 245, 255, 906 P2d 272 (1995); *Fisher Broadcasting, Inc. v. Dept. of Rev.*, 321 Or 341, 351-54, 898 P2d 1333 (1995).

ORS 260.560 provides that "[a] person who is not an elector shall not attempt to obtain signatures on an initiative, referendum or recall petition." The Secretary, who is statutorily authorized to adopt rules to implement statutes governing the initiative process, adopted OAR 165-014-0005 (1996), which parrots the statutory requirement that a petition circulator "[m]ust be a registered voter of the State of Oregon."

Neither ORS 260.560 nor OAR 165-014-0005 spells out the consequence for violating the requirement that petition circulators be Oregon registered voters. ORS 260.995, however, provides that the Secretary or the Attorney General may impose a civil penalty not to exceed $250

> "for each violation of any provision of Oregon Revised Statutes relating to the conduct of any election, any rule adopted by the Secretary of State under ORS chapters 246 to 260 or any other matter preliminary to or relating to an election, for which no penalty is otherwise provided."

There is no question that the civil penalty provision applies to violations of ORS 260.560[1] and OAR 165-014-0005 (1996).

---

[1] What is codified as ORS 260.560 was enacted as Oregon Laws 1983, chapter 514, section 16. Section 17(6) of the same enactment specified that "Violation of * * * section 16 of this 1983 Act is punishable by a fine of not more than $250." Or Laws 1983, ch 514, § 17(6). Thus, as originally enacted, the penalty of $250 was tied expressly to violation of ORS 260.560.

In 1987, the legislature revised the penalty provisions of ORS chapter 260. Among other things, it deleted specific reference to violation of ORS 260.560 and broadened the $250 fine to cover violations of all election law statutes and rules for which no other penalty is provided. Or Laws 1987, ch 718, § 1.

The question is whether that remedy is the exclusive remedy for violations of the statute and the rule. Certainly, nothing in the language of the statute suggests any legislative intention to make the civil fine cumulative of other remedies such as the invalidation of signatures. The legislature expressly has provided for invalidation of signatures upon violation of other statutes. *See, e.g.,* ORS 249.008(1) ("No signature in violation of the provisions of this chapter shall be counted."); ORS 249.865(5) ("[a]ny intentional or willful violation [of the statute] shall invalidate the prospective petition"); ORS 250.105(2) (the Secretary shall not accept initiative or referendum petition if fewer than required number of signatures are submitted). The failure of the legislature to include similar language in its description of the consequences of violating ORS 260.560 strongly suggests that it did not intend invalidation of signatures to be a remedy for violating that statute.

Even assuming that the legislature intended that the civil fine be cumulative of common-law remedies, the fact is that there are no such common-law remedies for the violation of the statute and rule requiring petition circulators to be Oregon registered voters. At one time, there were various statutory requirements regarding the "legal sufficiency" of an initiative measure. *See generally* OCLA 81-2101 *et seq.* Those requirements did not include that petition circulators be Oregon registered voters. They did, however, expressly provide that courts were authorized to enjoin the Secretary from certifying a measure to the ballot upon a showing of failure to comply with those statutory requirements. OCLA 81-2105 ("On a showing that any petition filed is not legally sufficient, the court may enjoin the secretary of state and all other officers from certifying or printing on the official ballot for the ensuing election the ballot title and numbers of such measure."). Pursuant to that statute, various cases, including *Snell* and *Olcott*, ordered the invalidation of initiative petition signatures because of proof of legal insufficiency. In *Snell*, the court ordered invalidation because of false verification by petition circulators. *Snell*, 155 Or at 306-09. In *Olcott*, the court ordered invalidation because of circulator fraud. *Olcott*, 62 Or at 286.

OCLA 81-2105, codified at ORS 254.050 (1953), was repealed in 1957. Or Laws 1957, ch 608, § 231. In several subsequent cases, the Supreme Court continued to refer to its authority to conduct preenactment review of ballot measures for legal sufficiency, that is, for compliance with statutory requirements for placing measures on the ballot. In none of those cases, however, did the court invoke the authority to invalidate signatures on the ground that the measure was legally insufficient. In *Unlimited Progress v. Portland*, 213 Or 193, 324 P2d 239 (1958), the court held only that

> "if a proposed measure is legally sufficient in that all the provisions of the law relating to initiative measures have been formally complied with so that the measure, regardless of the legality of the subject matter and substance contained therein, will require an administrative official to place it upon the ballot for consideration of the voters, the courts will not interfere with the attempt to enact the measure. It is only after the proposed measure is enacted that the courts have power to declare the measure ineffectual in law."

*Id.* at 195.

In *Johnson v. City of Astoria*, 227 Or 585, 363 P2d 571 (1961), the court repeated the rule that the unconstitutionality of a proposed measure, if enacted, provides no basis for preenactment review by the courts. The court specifically referred to earlier cases and to the earlier version of the statute. At that time, the court said:

> "OCLA 81-2105 * * * was in effect. This statute authorized a writ of mandamus to be issued against the secretary of state or other appropriate public official who refused to accept and file a 'legally sufficient' petition for the initiative or referendum and the issuance of an injunction to restrain such official from certifying or printing on the official ballot a petition which was not 'legally sufficient.' The words 'legally sufficient' were held to have no reference to the question of whether the proposed measure if adopted would be constitutional, but to 'refer only to a compliance with the procedure prescribed by statute for getting an initiative measure on the ballot.' *State ex rel. Carson v. Kozer*, [126 Or 641, 646, 270 P 513 (1928)]. The statute * * * was repealed by Oregon Laws 1957, ch 608, § 231. Its repeal, however,

had no effect on the law as previously announced * * *, for the rule * * * was followed in *Unlimited Progress v. Portland*, supra, decided in 1958."

*Id.* at 592. Thus, the court held that what survived the repeal of OCLA 81-2105 was the rule that the courts lack authority to review the constitutionality of a measure on a preenactment basis, not that the courts have the authority to invalidate signatures for any legal insufficiency.

In *Lindstrom v. Myers*, 273 Or 46, 539 P2d 1049 (1975), the court more directly addressed the scope of its authority to invalidate initiative petition signatures for legal insufficiency. The plaintiff sought to enjoin the Secretary from placing a measure on the ballot on a variety of grounds, among other things, the inclusion of the legislative relating clause in addition to the ballot title, the inclusion of more than three chief petitioners on the initiative petition cover sheet, and various improprieties in the filing of statements of contributions and expenditures. Addressing the inclusion of the legislative relating clause, the court held that, assuming for the sake of argument that it was improper to include the legislative relating clause, the defect did not justify invalidating petition signatures:

> "[The] ballot title was prominently displayed upon the petitions preceding the legislative title and the balance of the proposed initiative measure. The chance of serious confusion in a signer's mind concerning the subject of the measure was, in our opinion, so remote that we find no grounds for objection[.]"

*Id.* at 50. The court turned to the inclusion of more chief petitioners than the law allowed. It held again that the defect did not justify invalidation of the signatures:

> "The important thing is the extent to which the defect might influence the voters' consideration of the merits. In the present case we do not believe extra names should invalidate the petition because such names would not tend to be misleading."

*Id.* at 51. Finally, regarding the errors in the contributions and expenditures reports, the court again held that the errors did not justify the remedy that the plaintiff sought:

"[I]nvalidation of an election is a severe sanction and should not be lightly undertaken. It is a matter of balancing the seriousness of the defect against the consequences of invalidation. Before the electorate will be disenfranchised by anyone's failure to comply with the statute, the failure must be one of considerable magnitude which threatens the purity of the ballot. We do not so view this failure."

*Id.* at 56.

We also had occasion to address the scope of the courts' authority to invalidate signatures on the ground of legal insufficiency of the measure in *Barnes v. Paulus*, 36 Or App 327, 588 P2d 1120, *rev den* 284 Or 81 (1978). In that case, plaintiffs sought to enjoin the Secretary from placing a proposed constitutional amendment on the ballot, because, among other things, the words "That this Article is added to the Constitution to read:" were omitted from the cover sheet. We held, citing *Lindstrom*, that the appropriateness of the requested remedy depended on whether the error misled the signers of the petitions. *Barnes*, 36 Or App at 334. We noted that the petition cover sheet contained a ballot title, the text of which began with the words "Proposed constitutional amendment" and that, under the circumstances,

"[i]t hardly seems reasonable to assume that the absence of the language adverted to by plaintiffs was likely to have produced 'serious confusion in a signer's mind' concerning the impact of the proposed measure."

*Id.* (quoting *Lindstrom*, 273 Or at 50).

It was in the foregoing context that the legislature enacted what is now ORS 260.560 in 1983. To the extent that it was aware of existing case law at the time, therefore, it cannot be said that it intended to incorporate a judicially created remedy of invalidating signatures for legal insufficiency of ballot measures. At best, the cases at the time reflected a rule that courts will invalidate signatures when a defect in the measure likely would mislead the petition signers about the substance of the proposed measure. Assuming that the legislature intended that judicially created remedy to survive enactment of the 1983 statute, the fact remains that the defects about which plaintiff complains in this case simply

are not the sort that would mislead the voters about the substance of the proposed measure. The collection of initiative petition signatures by individuals not registered to vote in Oregon has nothing to do with the substance of the proposed measures themselves. We therefore reject plaintiff's first contention that signatures gathered in violation of ORS 260.560 and OAR 165-014-0005 (1996) must be invalidated. Because we conclude that violation of the statute and the rule do not require invalidation of initiative petition signatures, we do not reach intervenors' alternative constitutional arguments.

We turn to plaintiff's argument that the collection of signatures by nonregistered voters constituted fraud and "false verification" and that, on those grounds, signatures must be invalidated. Plaintiff's alternative argument actually consists of two independent contentions, which we address in turn.

First, plaintiff contends that, in *Olcott*, the Supreme Court held that signatures gathered by means of fraud must be invalidated. The Secretary contends that there is no evidence of fraud in this case and, in any event, *Olcott* applied OCLA 81-2105, now repealed. We agree with the Secretary.

Plaintiff *assumes* that the collection of signatures by individuals not registered to vote amounts to fraud, but he never explains why that is so. Fraud requires, among other things, proof of reliance and injury. *Johnsen v. Mel-Ken Motors, Inc.*, 134 Or App 81, 89, 894 P2d 540 (1995). In this case, there is neither evidence nor argument as to who relied on the fact that individuals collecting initiative petition signatures falsely represented themselves to be registered Oregon voters or as to how anyone was injured as a result. Moreover, as we have concluded, to the extent that *Olcott* remains good law following the repeal of the statute on which it is based, the decision stands for a more limited rule that courts retain authority to conduct preenactment review for the legal sufficiency of proposed initiative measures, not that courts may invalidate signatures for collecting signatures in violation of the law.

Second, plaintiff contends that Oregon law—specifically OAR 165-014-0030 (1996)—requires that petitions submitted without circulator verification must be rejected.

Plaintiff acknowledges that the signature sheets submitted in this case in fact were verified by the individual who collected the signatures. He contends that, because the circulators were not registered voters, their verifications were untruthful and that untruthful verifications should be considered no verifications at all. The Secretary contends that the rule simply does not say that petitions verified by persons not registered to vote must be invalidated. At the very least, the Secretary argues, his is a reasonable reading of the administrative rule, and that, in and of itself, should suffice to defeat plaintiff's contention. Again, we agree with the Secretary.

OAR 165-014-0030 (1996) provides, in part:

> "A check is made to ensure that the circulator's verification statement on each signature sheet contains the signature of the circulator. Signature sheets without a circulator's signature on the circulator's verification statement are rejected."

The circulator's verification statement contains no representations as to the *circulator's* qualifications to vote in Oregon. OAR 165-014-0005 (1996). Thus, signature sheets verified by a circulator who is not a registered voter, strictly speaking, contain no falsehood, as long as the circulator in fact does believe that those who signed the sheets were qualified to vote in this state. At the least, that is a reasonable reading of the regulation. In *Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 142, 881 P2d 119 (1994), the Supreme Court held that an agency's interpretation of its own rules is binding unless it is inconsistent with the wording of the rule or some other source of law. In this case, the Secretary's reading of his own rule is entirely consistent with its language and is inconsistent with no other source of law.

Plaintiff insists that the Secretary's interpretation of OAR 165-014-0030 (1996) conflicts with the Supreme Court's decision in *Snell*. In that case, however, as we have explained, the court construed a statute that since has been repealed and that contained different language from what is contained in the current administrative rule. We therefore

reject plaintiff's alternative arguments for invalidation of signatures collected in support of Ballot Measure 44 and conclude that the trial court did not err in entering summary judgment in favor of the Secretary.

Affirmed.